**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DOMINIQUE MIRZA, and TARA LUCHETTI, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-05836 |
| Plaintiffs, | Hon. Charles P. Kocoras |
| v. | |
| IGNITE USA, LLC, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IGNITE USA'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 3

III.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1)
BECAUSE PLAINTIFFS LACK STANDING OR, ALTERNATIVELY,
BECAUSE THEIR CLAIMS ARE PRUDENTIALLY MOOT ...................................... 5

    A.    The FAC Identifies No Injury In Fact Fairly Traceable to Ignite ......................... 5

    B.    The Court Should Decline to Exercise Jurisdiction Under the Prudential
Mootness Doctrine ................................................................................ 9

IV.    THE FAC FAILS TO STATE A CLAIM FOR RELIEF UNDER RULE 12(B)(6) ....... 10

    A.    Plaintiffs Fail to State a Claim Under the Consumer Protection Statutes of
Pennsylvania and New York .................................................................. 10

        1.    Plaintiffs Identify No Actionable Misrepresentation on Which
They Justifiably Relied .................................................................. 10

        2.    Plaintiffs Fails to Allege Facts Sufficient to Allege a Fraudulent
Omission ..................................................................................... 13

        3.    Plaintiff Mirza's UTPCPL Claims Are Barred By the Economic
Loss Doctrine .............................................................................. 15

    B.    Plaintiffs Fail to State a Claim for Breach of Implied Warranty ........................ 16

        1.    Plaintiffs' Failure to Specify Which Jurisdiction's Law Applies
Requires Dismissal ....................................................................... 16

        2.    To the Extent Plaintiff Luchetti's Implied Warranty Claim is
Brought Under New York Law, It Fails Due to Lack of Notice and
Lack of Privity ............................................................................. 17

    C.    Plaintiffs Fail to State a Claim for Unjust Enrichment .................................... 19

V.    CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Continental Motor Werks, Inc.*,
  1996 WL 79403 (N.D. Ill. Feb. 16, 1996) ............................................................. 14

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*,
  858 N.Y.S.2d 405 (N.Y. App. Div. 2008) ............................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 11

*Berkery v. Verizon Comms. Inc.*,
  658 F. App'x 172 (3d Cir. 2016) ........................................................................... 16

*Bolus v. Nationwide Prop. & Cas. Co.*,
  2018 WL 1474669 (M.D. Pa. Mar. 26, 2018) ....................................................... 12

*Bordoni v. Chase Home Fin. LLC*,
  374 F. Supp. 3d 378 (E.D. Pa. 2019) .................................................................... 16

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................................................... 18

*Cheng v. BMW of N. Am.*,
  2013 WL 3940815 (C.D. Cal. July 26, 2013) ......................................................... 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................ 5

*Comcast v. Behrend*,
  569 U.S. 27 (2013) ................................................................................................ 10

*Corsello v. Verizon New York, Inc.*,
  967 N.E.2d 1177 (N.Y. 2012) ............................................................................... 20

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018) ................................................................... 12

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ................................................................................... 15

*Equal Employment Opportunity Comm'n v. Flambeau, Inc.*,
  846 F.3d 941 (7th Cir. 2017) .................................................................................. 9

*Forschner Group, Inc. v. Arrow Trading Co.*,
  30 F.3d 348 (2d Cir. 1994) ................................................................................... 12

*Fullerton v. Corelle Brands, LLC*,
  2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ........................................................ 20

*Gates v. City of Chicago*,
  623 F.3d 389 (7th Cir. 2010) .................................................................................. 7

*Goleman v. York Int'l Corp.*,
   2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ........................................................... 14

*Gotthelf v. Toyota Motor Sales USA, Inc.*,
   525 F. App'x 94 (3d Cir. 2013) ........................................................................... 15

*Hadley v. Chrysler Group, LLC*,
   624 F. App'x 374 (6th Cir. 2015) ................................................................... 1, 6, 8

*Hamilton v. Gen. Mills, Inc.*,
   2016 WL 4060310 (D. Or. July 27, 2016) ....................................................... 7, 15

*Hodges v. Apple Inc.*,
   640 F. App'x 687 (9th Cir. 2016) ....................................................................... 12

*Hubbard v. General Motors Corp.*,
   1996 WL 274018 (S.D.N.Y. May 22, 1996) ..................................................... 18

*In re Johnson & Johnson Talcum Powder Prods. Marketing, Sales Practices & Liab.*
   *Litig.*,
   903 F.3d 278 (3d Cir. 2018) ................................................................................. 8

*In re McNeil Consumer Healthcare Marketing & Sales Prac. Litig.*,
   877 F. Supp. 2d 254 (E.D. Pa. 2012) .............................................................. 6, 9

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ............................................................. 17

*In re Scotts EZ Seed Litig.*,
   2013 WL 2303727 (S.D.N.Y. May 22, 2013) ................................................... 18

*In re Sling Media Slingbox Ad. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ............................................................... 14

*In re VTech Data Breach Litig.*,
   2018 WL 1863953 (N.D. Ill. April 18, 2018) ........................................... 3, 17, 19

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................ 17

*Kommer v. Ford Motor Co.*,
   2017 WL 3251598 (N.D.N.Y. July 28, 2017) ..................................................... 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................ 5, 6

*Malibu Media, LLC v. Doe*,
   238 F. Supp. 3d 638 (M.D. Pa. 2017) ............................................................... 13

*Mazur v. Milo's Kitchen, LLC*,
   2013 WL 3245203 (W.D. Pa. June 25, 2013) ................................................... 19

*McGuckin v. Allstate Fire & Cas. Ins. Co.*,
   118 F. Supp. 3d 716 (E.D. Pa. 2015) ................................................................ 16

*Montanez v. HSBC Mortg. Corp.*,
   876 F. Supp. 2d 504 (E.D. Pa. 2012) ................................................................ 16

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (S.D.N.Y. 2017) ........................................................ 13

*Parrot v. Family Dollar, Inc.*,
   2018 WL 2118195 (N.D. Ill. May 8, 2018) .............................................. 14

*Powell v. Saint Joseph's Univ.*,
   2018 WL 994478 (E.D. Pa. Feb. 20, 2018) .............................................. 16

*Richards v. Johnson & Johnson, Inc.*,
   2018 WL 2976002 (N.D.N.Y. June 12, 2018) ......................................... 18

*Rubenstein v. The Gap, Inc.*,
   14 Cal. App. 5th 870 (2017) ...................................................................... 12

*Santana v. Cook Co. Bd. of Review*,
   679 F.3d 614 (7th Cir. 2012) ....................................................................... 4

*Spokeo, Inc. v. Robins*,
   —— U.S. ——, 136 S. Ct. 1540 (2016) ...................................................... 5

*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998) ...................................................................................... 5

*Stewart v. Riviana Foods Inc.*,
   2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ........................................ 13

*Sugasawara v. Ford Motor Co.*,
   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ............................. 1, 6, 7, 8

*Szajna v. General Motors Corp.*,
   115 Ill.2d 294 (1986) ................................................................................ 12

*Tatum v. Takeda Pharma. N. Am. Inc.*,
   2012 WL 5182895 (E.D. Pa. Oct. 19, 2012) ........................................... 19

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (S.D.N.Y. 2014) ....................................................... 18

*Tosh-Surryhne v. Abbott Labs Inc.*,
   2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) .......................................... 7

*Vullings v. Bryant Heating & Cooling Sys.*,
   2019 WL 687881 (E.D. Pa. Feb. 19, 2019) ............................................. 13

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ............................................................... 15, 16

*Whitaker v. Herr Foods*,
   198 F. Supp. 3d 476 (E.D. Pa. 2016) ...................................................... 16

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .................................................................. 15

*Winzler v. Toyota Motor Sales USA, Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ....................................................... 2, 9, 10

*Woods v. Maytag Co.*,
    2010 WL 4314313 (S.D.N.Y. Nov. 2, 2010) ....................................................... 15

*Zafarana v. Pfizer Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ............................................................... 19

**Statutes**

15 U.S.C. § 2064 .............................................................................................................. 6

15 U.S.C. § 2064(d) ...................................................................................................... 4, 7

N.Y. U.C.C. § 2-607(3) ................................................................................................. 18

NY GBL § 349 ....................................................................................... 11, 12, 13, 15

NY GBL § 350 ............................................................................................. 11, 12, 13

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014) ............................................................. 12, 17

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 4

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) .................................................................................... 2, 11, 18

## I.     INTRODUCTION

Plaintiffs' First Amended Complaint (FAC)—the second attempt to turn an existing product recall into a nationwide class action—must be dismissed because Plaintiffs lack standing and fail to allege facts sufficient to state a claim for relief. In August 2019, defendant Ignite USA, LLC instituted a voluntary recall of some Contigo Kids Cleanable Water Bottles because (due to a missed step in the manufacturing process) a piece of the lid may detach and present a choking hazard. Through the voluntary recall, which is being conducted in conjunction with the U.S. Consumer Products Safety Commission, Ignite has already committed to provide all consumers who own a potentially affected Water Bottle with a free remedy that gives them what they bargained for—*i.e.*, functioning Water Bottles. Instead of engaging in the recall process, Plaintiffs have chosen to sue Ignite for "damages" based on "having paid more money than they otherwise would have for a dangerous and defectively designed product." FAC ¶ 11. But courts around the country have held that plaintiffs have no "benefit-of-the-bargain" injury where—as here—there is an available remedy that "remove[s] the defect upon which the plaintiffs' diminished-value injury claim is based." *Hadley v. Chrysler Group, LLC*, 624 F. App'x 374, 378 (6th Cir. 2015); *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6-7 (N.D. Cal. Aug. 21, 2019) (same). The only other "harm" Plaintiffs allege is that they will not have the use of their Water Bottles while waiting for the free remedy, but Plaintiffs cannot create an "injury" by refusing to participate in the recall. *See, e.g.*, *Sugasawara*, 2019 WL 3945105, at *6 (plaintiffs "cannot manufacture standing" by refusing to avail themselves of recall remedy).

Even if Plaintiffs identified some minimal injury in fact, the Court should decline to exercise jurisdiction under the prudential mootness doctrine. Plaintiffs seek no injunctive relief, nor would there be any injunction for the Court to order: Ignite has already recalled all potentially affected Water Bottles and has already committed to remedying the claimed defect at no cost to

consumers. Plaintiffs' request for damages to recompense their intangible "lost use" injury is simply not enough to create a viable Article III case or controversy—that "injury," if compensable at all, is so infinitesimal that it cannot justify the waste of public resources and significant transaction costs that would be expended to ultimately provide such relief. As Justice Gorsuch observed in a similar case, "[p]erhaps the lawyers would benefit if this would-be class action labored on through certification, summary judgment, and beyond. But it's hard to see how anyone else could." *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012).

The FAC also fails to state a claim for relief. First, the FAC's factual allegations fall short of stating a claim under Pennsylvania's or New York's consumer protection statutes. In their attempt to turn a manufacturing mishap into sweeping claims of consumer fraud, Plaintiffs contend that the product's *name*, "Contigo Kids," was an affirmative misrepresentation upon which they relied. FAC ¶ 13. There is no basis in law or logic for this assertion. Courts around the country have rejected similar attempts to convert a product's brand name into an implicit representation regarding the product's quality or characteristics. Nor is there any basis for Plaintiffs' fraudulent omission claim, because the FAC contains no factual allegations plausibly establishing that Ignitie knew Plaintiffs' Water Bottles were affected by the detachment issue at the time of their purchases. Plaintiff Mirza's statutory claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) fails for the additional reason that it is barred by the economic loss doctrine.

Plaintiffs' implied warranty and unjust enrichment claims also fail under Rule 12(b)(6). First, the FAC fails to identify the specific laws under which Plaintiffs purport to bring their implied warranty and unjust enrichment claims. Plaintiffs' attempt to plead "generic" common law claims, on behalf of a putative nationwide class, violates basic notice pleading requirements

because state law varies as to both implied warranty and unjust enrichment claims. *E.g.*, *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *8 (N.D. Ill. April 18, 2018) (dismissing cause of action for failure to identify the state law upon which it was based).

Assuming Plaintiff Luchetti brings her implied warranty claim under New York law, that claim fails for the independent reason that she fails to plead that she provide pre-suit notice of the alleged breach, as required by New York law. Moreover, under New York law, no implied warranty extends to a remote purchaser not in privity with the defendant where only economic loss is alleged. Because Plaintiff Luchetti purchased her Water Bottle from Target, and because she alleges only economic injury, her breach of implied warranty claim fails for lack of privity.

Finally, Pennsylvania and New York law both prohibit the kind of "catchall" unjust enrichment claims alleged in the FAC. In Pennsylvania, courts have found "unjust enrichment" claims inappropriate in cases where a consumer paid for and received a product but was later dissatisfied because the product was allegedly "defective." Similarly, New York's highest court has held that unjust enrichment claims are available only in "unusual situations," and that an unjust enrichment claim that is merely duplicative of other causes of action is subject to dismissal.

## II.     BACKGROUND

Defendant Ignite USA, LLC ("Ignite") distributes reusable beverage containers, coffee mugs, water bottles, and kids' cups under the "Contigo" brand name. On August 27, 2019, in conjunction with the United States Consumer Products Safety Commission, Ignite issued a voluntary recall of specific models from its Contigo Kids Cleanable Water Bottle line. FAC ¶ 3. Although there have been no reported injuries, Ignite recalled the bottles in an abundance of caution because—due to a missed step in the manufacturing process—the water bottle's clear silicone spout may detach from the lid posing a potential choking hazard. *Id*. ¶ 2; Declaration of

Steven E. Swaney Ex. A (Notice of Recall).[1] The recall notice makes clear that only *some* water bottles of that product line are affected by the issue; to assist consumers in identifying if their lid is affected, Ignite created a website (recall.gocontigo.com) that contains detailed instructions, including a three-minute video, showing consumers how identify the potentially affected lids. *See* Swaney Decl. Ex. A. For those consumers whose lids are affected, the recall provides a replacement lid at no cost to the consumer. *Id.*; *see also* 15 U.S.C. § 2064(d) (a product recall may include a remedy that "bring[s] the product into conformity," "repair[s] the defect in such product," or "replace[s] such product with a like or equivalent product").

Just ***two days*** after Ignite and the CPSC announced the voluntary recall, Plaintiff Dominique Mirza filed this putative class action. On October 16, 2019, Ignite filed a motion to dismiss for lack of standing based on the complaint's failure to provide even the most basic factual allegations establishing any harm to Plaintiff Mirza—including the failure to allege that Plaintiff Mirza's water bottles manifested the detachment issue or otherwise failed to function properly. The original complaint—which was obviously put together in less than 48 hours—was little more than a patchwork of quotations lifted from the CPSC recall notice, boilerplate allegations made "on information and belief," and a rote recitation of the elements of Plaintiff's causes of action.

In response to Ignite's motion to dismiss, Plaintiffs filed the FAC which added a new named plaintiff, Tara Luchetti. But otherwise the FAC is identical to the original complaint with two exceptions: (1) both Plaintiffs now allege that their water bottles experienced a detachment of the spout, although no details are provided (where, when, under what circumstances the

---

[1] The complaint repeatedly references, and its allegations are largely based upon, the notice of recall relating to the Water Bottles. Accordingly, the recall notice is incorporated by reference into the complaint and the Court may consider it in ruling on the current Rule 12 motions. *See Santana v. Cook Co. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (documents referred to in the complaint may be considered in ruling on a Rule 12 motion to dismiss).

alleged detachment occurred, etc.); and (2) Plaintiffs allege that the words "Contigo Kids"

constitute an actionable misrepresentation upon which they relied at the time of purchase.

Plaintiffs bring generic "breach of implied warranty" and "unjust enrichment" claims; Plaintiff

Mirza brings a claim under Pennsylvania's UTPCPL; and Plaintiff Luchetti brings fraud-based

claims under New York GBL §§ 349 and 350. *See* FAC ¶¶ 26-64.

## III. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFFS LACK STANDING OR, ALTERNATIVELY, BECAUSE THEIR CLAIMS ARE PRUDENTIALLY MOOT

Despite the addition of a few scant and conclusory factual allegations, the FAC still fails

to pled facts sufficient to establish Plaintiffs' constitutional standing under Article III. And even

if Plaintiffs established some *de minimis* harm, the Court should decline to exercise its

jurisdiction under the prudential mootness doctrine.

### A. The FAC Identifies No Injury In Fact Fairly Traceable to Ignite

To invoke the jurisdiction of the federal courts, a plaintiff must establish the three

elements that form the "irreducible constitutional minimum of standing": (1) injury in fact; (2)

causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see

also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998) (injury in fact is the "[f]irst

and foremost" requirement of standing). To satisfy that requirement, the plaintiff's claimed

injury must be "both concrete and particularized," and "not conjectural or hypothetical." *Spokeo,

Inc. v. Robins*, ––– U.S. ––––, 136 S. Ct. 1540, 1548 (2016). To be "concrete," the "injury must be

'de facto'; that is, it must actually exist." *Id*. Thus, the Supreme Court has held that "[a]llegations

of *possible* future injury are not sufficient" to confer standing; a "threatened injury must be

*certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

409 (2013) (emphasis in original; internal quotation marks omitted). The causation element of

constitutional standing requires that a plaintiff's injury be "fairly traceable to the challenged

action of the defendant." *Lujan*, 504 U.S. at 560. Because the opposing party must be the source of the harm, subject-matter jurisdiction is lacking if the plaintiff's alleged injury was the "result of the independent action of some third party not before the court." *Id.*

The FAC alleges that Plaintiffs have sustained economic injury by "having paid more money than they otherwise would have for a dangerous and defectively designed Product." FAC ¶ 11. But that supposed "benefit-of-the-bargain" injury cannot form the basis for standing in this case because Ignite has already committed, in conjunction with the CPSC, to fully redress that injury by taking corrective action though its voluntary recall. *See* 15 U.S.C. § 2064. Thus, Plaintiffs are already entitled to a cost-free remedy that gives them exactly what they "bargained for" at the time of purchase: *i.e.*, a properly functioning Water Bottle. As a result, they have no cognizable injury and therefore lack standing under Article III.

Courts around the country have found that consumers have no "benefit-of-the-bargain" injury based on the purchase of an allegedly defective product where the supplier has committed to a remedy that provides consumers with what they bargained for. *See, e.g.*, *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6-7 (N.D. Cal. Aug. 21, 2019) (plaintiffs had no "plausible theory of economic loss" based on purchase of defective vehicle where manufacturer's recall provided free repair that eliminated alleged defect) (citing *Hadley v. Chrysler Group, LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) (plaintiffs failed to establish a redressable injury because "the repair . . . that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based")); *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at * 5 (N.D.N.Y. July 28, 2017) (holding that while "overpayment" for a defective product may constitute an injury in some circumstances, "if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury"); *In re McNeil Consumer Healthcare Marketing & Sales Prac.*

*Litig.*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012) (defendant's recall program for defective products was sufficient to make plaintiffs whole and thus they had no standing); *Tosh-Surryhne v. Abbott Labs Inc.*, 2011 WL 4500880, at *4-5 (E.D. Cal. Sept. 27, 2011) (same); *see also Gates v. City of Chicago*, 623 F.3d 389, 412-13 (7th Cir. 2010) (plaintiff's claims for monetary relief were mooted by the defendant's tender of a remedy that would have made plaintiff whole). Nowhere do Plaintiffs allege that Ignite's voluntary recall would fail to give them what they bargained for; thus, they already have an available remedy that redresses their lost benefit-of-the-bargain. Under those circumstances, they have no purchase-price based injury to confer standing. *See Sugasawara*, 2019 WL 3945105, at *6 ("If the post-recall remedy [products] perform as they would without the Defect, then it follows that the [products'] pre-defect values have likewise been restored.").

That Plaintiffs may have preferred to receive a refund rather than a replacement does not change the analysis—if the compensation being offered is sufficient to fully redress the claimed injury, "[s]uch compensation can be monetary or nonmonetary; the central concern is that the compensation objectively make plaintiff whole." *Tosh-Surryhne*, 2011 WL 4500880, at *5. Again, Plaintiffs do not allege the recall would fail to provide them with what they bargained for; that they chose to sue for "damages," rather avail themselves of the recall remedy, does not establish an injury in fact under Article III. *See Hamilton v. Gen. Mills, Inc.*, 2016 WL 4060310, at *4-5 (D. Or. July 27, 2016) (plaintiff's decision to use for damages instead of accepting recall remedy could not establish an injury-in-fact based on overpayment for "falsely labeled" product). Indeed, Plaintiffs' position would turn warranty law on its head, as manufacturers would be obligated to refund some or all of the product's purchase price anytime the product contained a defect, rather than—as here—making the consumer whole by fixing the defect for free. *Cf.* 15 U.S.C. § 2064(d) (manufacturer or distributor may effectuate a recall by repairing or replacing product).

Apparently anticipating that their "benefit-of-the-bargain" injury was eliminated (or rendered moot) by Ignite's voluntary recall, Plaintiffs allege that receiving a free replacement lid "would not make [them] whole because it would not compensate [them] for the lost use of the water bottle in the interim period during which [they] would have to wait for a replacement lid." FAC ¶¶ 13, 14. But that is not a viable injury, either. Courts have rejected the contention that a consumer entitled to a free repair of a defective product can claim "damages" based solely on the inconvenience associated with obtaining the free repair. *See, e.g.*, *Hadley*, 624 F. App'x at 377-78 (rejecting claim for "loss use" of vehicle with defective airbag where manufacturer provided free repair that resolved any potential defect); *Cheng v. BMW of N. Am.*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("[A]s a practical matter, it is unclear how Plaintiff can demonstrate [monetary] injury in light of BMW's offer to completely repair the . . . defect."). Indeed, Plaintiffs make no attempt to quantify or describe the extent of their "lost use"; they make no allegation that the detachment issue or recall required them to spend money out of pocket; nor do they plead other facts demonstrating any tangible harm arising from their "lost use." Waiting to receive a free replacement part to remedy an alleged product defect is not, without more, a compensable injury under Article III. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Marketing, Sales Practices & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) ("Although injury-in-fact is not Mount Everest, it is more than a desert mirage. . . . [A] plaintiff [must] do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up.").

Moreover, to the extent Plaintiffs chose to forego the free replacement lid because they could not use their water bottles while waiting to receive it, that "injury" is self-inflicted and cannot provide the basis for standing. *See, e.g.*, *Sugasawara*, 2019 WL 3945105, at *6 ("To the extent [plaintiff] has not [availed himself of the recall remedy], he cannot thereby manufacture

standing. Any defect that persists in [plaintiff's product] is not fairly 'traceable' to Ford but rather to [plaintiff]; causation would therefore be lacking."); *In re McNeil*, 877 F. Supp. 2d at 276 (rejecting plaintiffs' claim for "incidental and consequential damages," such as time spent investigating the recall, as those damages were "the result of the plaintiffs' own choices and are not fairly traceable to the actions of the defendants"). Simply put, Plaintiffs cannot refuse a free remedy that is intended to bring their product into conformance and then claim an "injury" because the product is unusable.

### B. The Court Should Decline to Exercise Jurisdiction Under the Prudential Mootness Doctrine

Even if the Court were to find that Plaintiffs have adequately pled some *de minimis* injury, the Court should decline to exercise jurisdiction under the prudential mootness doctrine. That doctrine allows a federal court to find the absence of an Article III case or controversy when equitable or other considerations demonstrate the plaintiff's claims are, in effect, worthless. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Flambeau, Inc.*, 846 F.3d 941, 950 (7th Cir. 2017); *see also Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.) (a case may be prudentially moot when "the relief sought no longer has sufficient utility to justify [a] decision . . . on the merits") (internal quotation marks and citation omitted). Here, there is nothing this Court could do to redress Plaintiffs' alleged benefit-of-the-bargain injury that Ignite has not already agreed to do voluntarily. Rather, the only "injury" Plaintiffs claim is left unaddressed by the recall is "the lost use of the water bottle in the interim period during which [consumers] would have to wait for a replacement lid." FAC ¶¶ 13, 14. But that is an insufficient basis upon which to invoke the jurisdiction of this Court.

The *Winzler* decision is instructive. There, the plaintiffs sued Toyota for breach of warranty based on an alleged defect in the engine control module that could cause vehicles to

stall. 681 F.3d at 1209. But during the pendency of the suit Toyota initiated a voluntary recall of the affected vehicles, in conjunction with the National Highway Transportation Administration, that provided a free fix for owners of all affected vehicles. *Id*. The district court dismissed the action for lack of subject-matter jurisdiction on mootness grounds, and the Tenth Circuit affirmed. As is the case here, the court found that the free recall provided complete relief to the plaintiff. *Id*. at 1210. Thus, the court found that, "[a]t best, [the proposed class action] might duplicate . . . efforts and waste finite public resources in the process." *Id*. at 1211. Given those concerns, the Tenth Circuit held that invoking the jurisdiction of the federal courts to provide relief that was already available to the plaintiffs—and that was being provided in conjunction with an agency of the executive branch—would be both inefficient and counterproductive:

> [The court's] intervention would, as well, surely add new transaction costs for Toyota and perhaps reduce the incentive manufacturers have to initiate recalls (as Toyota did here), all while offering not even a sliver of additional relief for [the plaintiff] and members of the class she seeks to represent. Perhaps the lawyers would benefit if this would-be class action labored on through certification, summary judgment, and beyond. But it's hard to see how anyone else could.

*Id*.

The same is true here. Ignite's voluntary recall—issued in conjunction with the CPSC—will provide complete relief to Plaintiffs and putative class members. Even if the temporary "lost use" of the Water Bottles were a cognizable injury, the monetary value of such injury would be infinitesimally small. And attempting to quantify and calculate that injury—if even possible at all—would require complex expert analysis costing far more than such an injury could possibly be worth, even on an aggregate basis.[2] Under these circumstances—where Ignite has already agreed

---

[2] Of course, whether putative class members suffered an economic injury due to "lost use" would be highly individualized and based on innumerable confounding factors and therefore incapable of determination on a classwide basis. *See Comcast v. Behrend*, 569 U.S. 27, 34 (2013).

to provide Plaintiffs with a replacement product, and the value of any additional relief the Court could order would be vastly outweighed by the transaction costs to obtain that relief—the Court should decline to exercise jurisdiction based on prudential mootness.

## IV.    THE FAC FAILS TO STATE A CLAIM FOR RELIEF UNDER RULE 12(B)(6)

Even if the Court determines it has subject-matter jurisdiction, the FAC is still subject to dismissal because it fails to allege facts to state a claim for either Plaintiff.

### A.    Plaintiffs Fail to State a Claim Under the Consumer Protection Statutes of Pennsylvania and New York

Plaintiffs' "false advertising" and fraudulent omission claims under the consumer protection statutes of Pennsylvania and New York fail for a multitude of reasons. To satisfy basic federal pleading standards, a complaint must do more than offer "labels and conclusions"; it must contain "enough *facts* to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). "[C]onclusory statements," or allegations that are no more than legal conclusions, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint that merely offers "naked assertions" that amount to nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is subject to dismissal under Rule 12(b)(6). *Id.* at 678.

1.    *Plaintiffs Identify No Actionable Misrepresentation on Which They Justifiably Relied*

Plaintiffs base their UTPCPL and NY GBL §§ 349 and 350 claims on the words "Contigo Kids," alleging those words constitute a misrepresentation upon which they justifiably relied. FAC ¶¶ 45, 53, 60. But the plain language of both statutes precludes Plaintiffs' attempt to sue Ignite over the words "Contigo Kids": Pennsylvania's UTPCPL applies to "representations" that are "false" or "deceptive"; and NY GBL §§ 349 and 350 apply to "deceptive" acts and "false" advertising, respectively. Thus, for the words on a product's packaging to be actionable

under those statutes, the words must constitute a factual description of the "specific characteristics of a product that are subject to measurement and are therefore testable." *Bolus v. Nationwide Prop. & Cas. Co.*, 2018 WL 1474669, at *3 (M.D. Pa. Mar. 26, 2018) (internal quotation marks omitted); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (under NY GBL §§ 349 and 350, an advertising statement is nonactionable when it "cannot be proven true or false" and "does not provide a concrete representation"); *see also, e.g.*, *Black's Law Dictionary* 1492 (10th ed. 2014) (defining "representation" as "A presentation of fact . . . made to induce someone to act; the manifestation to another that a fact . . . exists"). Simply put, to be actionable under Pennsylvania or New York law, an advertising statement must be a representation of ***fact*** that is capable of being proven true or false.

The words "Contigo Kids" are nonactionable because they do not amount to a concrete representation that is subject to measurement; "Contigo Kids" is simply the product's name. Courts around the country have rejected the idea that a product's brand name carries some implicit representation about the quality of the product or its performance. *See, e.g.*, *Hodges v. Apple Inc.*, 640 F. App'x 687, 689 (9th Cir. 2016) ("The name MacBook Pro with Retina display promises only that the computer will have characteristics specified by those words: it says nothing regarding the overall quality of the line or the comparative quality of each unit."); *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 320 (1986) (a "trademark or brand name, alone, is [not] intended to include a representation that the component parts of [a] product are of a particular kind or quality"); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877-79 (2017) (placing company's brand name on factory outlet clothing was not a misrepresentation as to the quality of the outlet clothing); *Forschner Group, Inc. v. Arrow Trading Co.*, 30 F.3d 348, 357 (2d Cir. 1994) ("[U]se of the phrase [Swiss Army knife] cannot be deemed a representation of high

quality solely because consumers associate high quality with Swiss companies and Swiss craftsmen."). The words "Contigo Kids" of the packaging of a water bottle are not a factual representation upon which claims of "false" or "deceptive" advertising can be based.

Apparently recognizing that "Contigo Kids" does not convey factual information that could be proven true or false, Plaintiffs suggest that these words "impliedly warranted that the Products were safe for children to use." FAC ¶ 45. But both the UTPCPL and NY require that the challenged statement be likely to deceive a *reasonable* consumer. *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 647 (M.D. Pa. 2017) (UTPCPL claim requires proof of "a deceptive act likely to deceive a reasonable consumer"); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673 (S.D.N.Y. 2017) ("A 'deceptive act' [under GBL sections 349 and 350] is any act likely to mislead a reasonable consumer acting reasonably under the circumstances."). As a matter of law, no reasonable consumer would read the words "Contigo Kids" to "impliedly warrant" that the product is free from defects. *See Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at *10 n.22 (S.D.N.Y. Sept. 11, 2017) ("Satisfying the reasonable consumer standard requires more than a mere possibility that [the defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.") (quotation marks omitted). Consumers cannot imply whatever meaning they please into a word on a product package in order to cry "fraud" when they are later dissatisfied with the product.

2. *Plaintiffs Fails to Allege Facts Sufficient to Allege a Fraudulent Omission*

Plaintiffs also allege, in the most conclusory and cursory way, that Ignite "omitted from Plaintiff . . . that the Products were defective and therefore unsafe for children to use." FAC ¶ 45. In order to adequately allege a duty to disclose under either the UTPCPL or NY GBL § 349, Plaintiffs must set forth plausible factual allegations that Ignite *knew* the Water Bottles Plaintiffs purchased were defective *at the time of sale*. *See Vullings v. Bryant Heating & Cooling Sys.*,

- 13 -

2019 WL 687881, at *6 (E.D. Pa. Feb. 19, 2019) ("Without information to support an inference

that Defendants knew of the defect and acted deceptively to withhold that information, Plaintiff

has not made out a claim of deceptive conduct under the UTPCPL."); *In re Sling Media Slingbox*

*Ad. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) ("[P]laintiffs pursuing an omission-based

claim [under § 349] must plausibly allege[ ] that the . . . [d]efendants had knowledge of the

[material information] and failed to disclose or actively concealed such information.") (internal

quotation marks omitted). A "defendant's failure to reveal facts about which even it was unaware

at the time will not lead to liability." *In re Sling Media*, 202 F. Supp. 3d at 359; *see also*

*Goleman v. York Int'l Corp.*, 2011 WL 3330423, at * (E.D. Pa. Aug. 3, 2011) (to state a claim

under the UTPCPL, "[a] plaintiff must plead facts alleging a specific deceptive act rather than a

general failure to disclose information").

       Plaintiffs' fraudulent omission claim fails because the FAC contains no factual

allegations establishing that Ignite knew of the alleged defect at the time Plaintiffs purchased

their Water Bottles. It is black-letter law that "[b]are, conclusory allegations of knowledge and

general knowledge are not enough to sustain a claim." *Alexander v. Continental Motor Werks,*

*Inc*. 1996 WL 79403, at *7 (N.D. Ill. Feb. 16, 1996); *see also Parrot v. Family Dollar, Inc.*, 2018

WL 2118195, at *3 (N.D. Ill. May 8, 2018) ("Allegations of generalized knowledge about a

product's potential defects are insufficient to support a plaintiff's claim of a defendant's actual

knowledge."). Thus, the FAC's rote assertion that Ignite "has known about the defective nature

of the Products long before they issued the recall" (FAC ¶ 8) is not entitled to a presumption of

truth. The only other allegation is that Ignite "received 149 reports of the spout detaching" (*id*.),

but that is insufficient to establish that Ignite knowingly sold a defective product. The FAC does

not allege when those reports were made, and "courts have rejected undated customer complaints

offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (emphasis original); *see also Gotthelf v. Toyota Motor Sales USA, Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) (allegation that defendant received complaints was insufficient to establish knowledge when the complaint "does not state when the alleged complaints were received, or to whom at [defendant] these alleged complaints were sent"); *Woods v. Maytag Co.*, 2010 WL 4314313, at *8 (S.D.N.Y. Nov. 2, 2010) (in the absence of well-pled facts establishing when customer complaints were made, plaintiff failed to allege defendant's knowledge to support a fraudulent omission claim under GBL § 349).

Simply put, there is no legal or factual basis for Plaintiffs' attempt to "paint[ ] a discreet, manufacturing mishap as a grand scheme of deceptive advertising, marketing, and labeling." *Hamilton*, 2016 WL 4060310, at *5. The FAC fails to include factual allegations to support false advertising or fraudulent omission claims under Pennsylvania or New York law.

### 3. *Plaintiff Mirza's UTPCPL Claims Are Barred By the Economic Loss Doctrine*

Plaintiff Mirza's UTPCPL claim fails for the additional reason that it is barred by the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The Third Circuit has held that the doctrine applies to UTPCPL claims when the plaintiff asserts purely economic harm based on the purchase of an allegedly "defective" product that has caused no personal injury or property damage. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (economic loss doctrine barred UTPCPL claims alleging plaintiffs paid too much for automobiles with faulty transmissions). Although the law in Pennsylvania is somewhat unsettled, the Third Circuit has

not reversed its holding in *Werwinski*, and thus district courts continue to follow it. *See Whitaker v. Herr Foods*, 198 F. Supp. 3d 476, 488-90 (E.D. Pa. 2016) (discussing a 2013 Pa. Supr. Court decision that disagreed with *Werwinski* and created a split among lower courts, but concluding that since "the Third Circuit has not questioned the propriety of its decision in *Werwinski* . . . Plaintiff's UTPCPL claim will be dismissed pursuant to the economic loss doctrine because Plaintiff alleges only economic damages"). In fact, the Third Circuit recently signaled that *Werwinski* remains good law notwithstanding the 2013 Pennsylvania state court case. *See Berkery v. Verizon Comms. Inc.*, 658 F. App'x 172, 175 (3d Cir. 2016) (affirming district court's dismissal of UTPCPL claims under economic loss doctrine). Thus, this Court should follow *Werwinski* and hold that UTPCPL claims like those Plaintiff Mirza now brings—in which the only alleged injury is the loss of money—are barred by the economic loss doctrine. *See id.*; *see also, e.g.*, *Powell v. Saint Joseph's Univ.*, 2018 WL 994478, at *9-10 (E.D. Pa. Feb. 20, 2018) (finding 2013 Pennsylvania Superior Court decision was based on "perfunctory" reasoning and following *Werwinski* to hold that "the economic loss doctrine bars plaintiff's claim under the UTPCPL"); *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 386 (E.D. Pa. 2019) (same); *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (same); *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 518 (E.D. Pa. 2012) (same).

### B. Plaintiffs Fail to State a Claim for Breach of Implied Warranty

#### 1. *Plaintiffs' Failure to Specify Which Jurisdiction's Law Applies Requires Dismissal*

Plaintiffs assert a generic "implied warranty" claim on behalf of themselves and every consumer in the United States who purchased a Water Bottle, yet the complaint fails to identify the jurisdiction(s) under which they brings their individual claims. FAC ¶¶ 26-33. This type of "generic pleading" is improper because there are significant variations in state law, and thus the

failure to identify which jurisdiction's laws apply violates the basic notice pleading requirements of Rule 8. This alone requires dismissal. *See, e.g.*, *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *8 (N.D. Ill. April 18, 2018) ("[B]ecause [Plaintiffs] failed to identify the states' laws on which they base their unjust enrichment claim, they failed to state a cause of action."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017) ("[P]laintiffs claim unjust enrichment generally, and do not list any particular jurisdiction to which the allegations should apply. This alone is fatal to [Plaintiffs'] unjust enrichment claim."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (same).

Without knowing which jurisdiction's law applies, it is difficult for Ignite to respond to the theories asserted within Plaintiffs' breach of implied warranty claim. For example, Plaintiffs base their implied warranty claim on the allegation that "Defendants, through the Products' 'Contigo Kids' representation on the Products' labeling, also impliedly warranted that the Products were safe for children to use." FAC ¶ 28; *see also id.* ¶ 13 ("Ms. Mirza understood this representation ['Contigo Kids'] as an implied warranty that the Product was safe for her children to use."). But as a general legal principle, the words on a product's packaging cannot create an *implied* warranty. *See Black's Law Dictionary* 1822 (10th ed. 2010) (defining "implied warranty" as "An obligation imposed by the law *when there has been no representation or promise*."). The Federal Rules do not impose an obligation on a defendant—much less the Court—to guess at what law applies to a plaintiff's causes of action in order to determine if a viable claim has been stated.

2. *To the Extent Plaintiff Luchetti's Implied Warranty Claim is Brought Under New York Law, It Fails Due to Lack of Notice and Lack of Privity*

Under New York law, Plaintiff Luchetti's breach of implied warranty of merchantability claim fails as a matter of law for at least two reasons: first, she did not provide notice to Ignite as required by New York law; and second, she is not in privity with Ignite.

First, "[t]o recover on a warranty claim under New York law, a plaintiff 'must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Richards v. Johnson & Johnson, Inc.*, 2018 WL 2976002, at *8 (N.D.N.Y. June 12, 2018) (quoting N.Y. U.C.C. § 2-607(3)); *see also Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (S.D.N.Y. 2014). Where—as here—the complaint lacks any allegation that the plaintiff provided notice of the alleged breach of implied warranty, the claim is subject to dismissal under Rule 12(b)(6). *See Richards*, 2018 WL 2976002 at *8; *see also, e.g.*, *Hubbard v. General Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996).

Second, like many other jurisdictions, New York requires privity of contract between a plaintiff and defendant for breach of implied warranty claims where the only alleged loss is economic. *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405 (N.Y. App. Div. 2008) ("[A] remote purchaser is barred as a matter of law from claiming economic damages due to [the manufacturer's] alleged breach of implied warranties."); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) ("New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic.").

Here, Plaintiff Luchetti alleges she purchased a Water Bottle from a Target retail store in Penfield, New York; thus, she is not in privity with Ignite. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *8 (S.D.N.Y. May 22, 2013) (consumers of Scotts EZ Seed who purchased from retailers—Home Depot and Lowe's—were not in privity with Scotts). And the only "injuries" Luchetti claims—"overpayment" and "lost use" of the Water Bottle (FAC ¶ 14)—are purely economic. Accordingly, her breach of implied warranty of merchantability claim should be dismissed under New York law. *See Catalano*, 167 F. Supp. 3d at 556.

### C. Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' attempt to assert an unjust enrichment claim fails for at least two reasons. First, as with the non-specific "breach of implied warranty" claim, the FAC fails to identify which jurisdiction(s)' law(s) apply. *See* FAC ¶¶ 34-38. As explained above, this requires dismissal for failure to state a claim. *See In re VTech Data Breach Litig.*, 2018 WL 1863953, at *8.

Second, if the Court were to assume Pennsylvania and New York law apply, both those states prohibit the kind of "catchall" unjust enrichment claim that Plaintiffs attempt to assert here. In Pennsylvania, courts have taken a narrow view of unjust enrichment claims in cases involving the sale of an allegedly defective product. *See, e.g.*, *Tatum v. Takeda Pharma. N. Am. Inc.*, 2012 WL 5182895, at *4-5 (E.D. Pa. Oct. 19, 2012) (action based on purchase of defective product "is not a case in which a claim for unjust enrichment is appropriate"). Those courts have held there is no basis for an "unjust enrichment" claim under Pennsylvania law where—as here—the plaintiff paid for a product, received the product, but was later dissatisfied with the product for some reason. *See id.* (plaintiff could not claim "unjust enrichment" where there was no "allegation that Defendants refused to provide a service or goods after [Plaintiff] provided Defendants with a benefit"); *Zafarana v. Pfizer Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (claim for "unjust enrichment" improper in the absence of "allegation that Defendants refused to provide a service or good after Plaintiffs had provided Defendants with a benefit"). This is true even in cases where the product actually malfunctioned and caused an injury, because "unjust enrichment is not a substitute for failed tort claims in Pennsylvania." *Zafarana*, 724 F. Supp. 2d at 560; *see also Mazur v. Milo's Kitchen, LLC*, 2013 WL 3245203, at *9-10 (W.D. Pa. June 25, 2013) (plaintiff had no "unjust enrichment" claim based on purchase of dog treat that sickened her dog, because "while she [was] dissatisfied with the chicken jerky treats, she nevertheless

purchased, received and used the product. It therefore cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was 'wrongly secured'").

Similarly, in New York relief for unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *12 (N.D. Ill. Sept. 30, 2019) ("[U]nder New York law, claims for unjust enrichment may not proceed as a 'catchall cause of action.'"). Accordingly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 967 N.E.2d at 1185. The allegations in the FAC do not present the type of "unusual situation" where an unjust enrichment claim might be appropriate, and Plaintiff Luchetti's unjust enrichment claim is based on the identical factual allegations as all of Plaintiffs' other claims. It is therefore subject to dismissal under controlling New York law.

## V.     CONCLUSION

For the foregoing reasons, the FAC should be dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim on which relief can be granted.

Dated:      December 4, 2019                Respectfully submitted,

SCHIFF HARDIN LLP
Attorneys for Defendant Ignite USA, LLC

By:     */s/ Steven E. Swaney*
        _____

       Joseph J. Krasovec III
       Steven E. Swaney (*pro hac vice*)
       Jeffrey M. Heckendorn
       Schiff Hardin LLP
       233 South Wacker Drive, Suite 7100
       Chicago, IL 60606
       312.258.5500
       Firm ID #90219