**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DOMINIQUE MIRZA and TARA LUCHETTI, individually and on behalf of all others similarly situated, | Civil Action No. 1:19-cv-05836 |
| Plaintiff, | Hon. Charles P. Kocoras |
| v. | |
| IGNITE USA, LLC, | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.     DEFENDANT'S RECALL DOES NOT DEFEAT STANDING ..................................... 1

     A.     Plaintiffs Have Article III Standing ......................................................... 1

     B.     The Prudential Mootness Doctrine Is Inapplicable ................................. 5

II.    PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF
CONSUMER PROTECTION STATUTES ........................................................... 8

     A.     Plaintiffs Sufficiently Allege That "Contigo Kids" Misleads
Consumers Into Thinking Defendant's Products Are Safe For Kids To
Use ........................................................................................................... 8

     B.     Plaintiffs Sufficiently Allege An Actionable Omission......................... 10

     C.     The Economic Loss Rule Does Not Bar Plaintiffs' Claims.................... 12

III.   PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED
WARRANTY ................................................................................................. 13

     A.     A Choice-Of-Law Determination Is Not Necessary At This Stage ...... 13

     B.     Plaintiffs Provided Sufficient Notice ..................................................... 14

     C.     Privity..................................................................................................... 15

IV.   PLAINTIFFS MAY PLEAD UNJUST ENRICHMENT IN THE
ALTERNATIVE .............................................................................................. 15

CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010)............................................................................ 9

*Berkery v. Verizon Comm'ns Inc.*,
  658 F. Appx. 172 (3d Cir. 2016) ............................................................................................ 13

*Busch v. Domb*,
  2017 WL 6525779 (E.D. Pa. Dec. 21, 2017).......................................................................... 12

*Cancino v. Yamaha Motor Corp., U.S.A.*,
  2008 WL 11353628 (S.D. Ohio Mar. 17, 2008)...................................................................... 3

*Cheng v. BMW of N. Am., LLC*,
  2013 WL 3940815 (C.D. Cal. July 26, 2013)........................................................................... 3

*Coffelt v. Kroger Co.*,
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ......................................................................... 2

*Dixon v. Ford Motor Co.*,
  2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ....................................................................... 10

*Dixon v. Northwestern Mutual*,
  146 A.3d 780 (Pa. Super. Ct. 2016)....................................................................................... 12

*Garcia v. Chrysler Group LLC*,
  2015 WL 5123134 (S.D.N.Y. Sept. 1, 2015) ......................................................................... 11

*Goldberg v. Kollsman Instr. Corp.*,
  12 N.Y.2d 432 (1963)............................................................................................................. 15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................................... 9

*Gordon v. Sig Sauer, Inc.*,
  2019 WL 4572799 (S.D. Tex. Sept. 20, 2019)......................................................................... 2

*Greene v. Sears Prot. Co.*,
  2017 WL 1134484 (N.D. Ill. Mar. 27, 2017) ......................................................................... 12

*Gubala v. CVS Pharmacy, Inc.*,
  2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ........................................................................... 9

*Hadley v. Chrysler Group LLC*,
  2014 WL 988962 (E.D. Mich. Mar. 13, 2014).......................................................................... 4

*Hadley v. Chrysler Grp., LLC*,
  624 F. App'x 374 (6th Cir. 2015) ............................................................ 3

*Hubbard v. Gen. Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. May 22, 1996) .......................................... 15

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*,
  2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .......................................... 9

*In re Actiq Sales & Mktg. Practices Litig.*,
  790 F. Supp. 2d 313 (E.D. Pa. 2011) ..................................................... 10

*In re Aqua Dots Prod. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ................................................................... 2

*In re Everfresh Beverages, Inc.*,
  238 B.R. 558 (Bankr. S.D.N.Y. 1999) ................................................... 14

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*,
  2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) ...................................... 4

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ..................................................... 3

*In re MacBook Keyboard Litig.*,
  2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) .................................... 2, 5, 6

*In re Mattel, Inc.*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008) ................................................ 4, 8

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................. 4

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................... 5

*Jones v. Fleetwood Motor Homes*,
  127 F. Supp. 2d 958 (N.D. Ill. 2000) ...................................................... 3

*Kantor v. Hiko Energy, LLC*,
  100 F. Supp. 3d 421 (E.D. Pa. 2015) .................................................... 12

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) .......................................... 13

*Knight v. Springfield Hyundai*,
  81 A.3d 940 (Pa. Super. Ct. 2013) ................................................... 12, 13

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*,
    657 F.3d 496 (7th Cir. 2011) ................................................................. 11

*Korte v. Pinnacle Foods Grp., LLC.*,
    2018 WL 1508855 (S.D. Ill. Mar. 27, 2018) ................................................ 9

*Kostovetsky v. Ambit Energy Holdings, LLC*,
    2016 WL 105980 (N.D. Ill. Jan. 8, 2016).................................................. 14

*Landau v. Viridian Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016).................................................... 13

*Leonard v. Abbott Labs., Inc.*,
    2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)................................................ 4

*Lovelace v. Nationwide Mut. Ins. Co.*,
    2018 WL 3818911 (E.D. Pa. Aug. 10, 2018) ............................................. 12

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ............................................................ 14

*Marin v. Apple-Metro, Inc.*,
    2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017) ............................................. 15

*Martin v. Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011)..................................................... 2

*Mazzanti v. Gen. Elec. Co.*,
    2017 WL 923905 (D. Conn. Mar. 7, 2017) .............................................. 14

*McCabe v. Daimler Ag*,
    2015 WL 11199196 (N.D. Ga. Aug. 19, 2015) ........................................... 6

*Moore v. Magiera Diesel Injection Servs., Inc.*,
    2019 WL 2502029 (N.D. Ill. June 17, 2019).............................................. 14

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
    239 F. Supp. 3d 761 (S.D.N.Y. 2017) ................................................... 16

*Olmos v. Harbor Freight Tools USA, Inc.*,
    2018 WL 8804820 (N.D. Cal. Dec. 24, 2018)........................................... 4

*O'Neill v. Standard Homeopathic Co.*,
    346 F. Supp. 3d 511 (S.D.N.Y. 2018) ................................................... 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995)..................................................................... 11

*Philips v. Ford Motor Co.*,
   2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ........................................................ 5, 6

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
   2010 WL 3912222 (S.D.N.Y. Sept. 29, 2010) ........................................................ 10

*Porter v. NBTY, Inc.*,
   2019 WL 5694312 (N.D. Ill. Nov. 4, 2019) ............................................................ 9

*Sater v. Chrysler Grp. LLC*,
   2014 WL 11412674 (C.D. Cal. Oct. 7, 2014) .................................................... 2, 3, 6

*Seldon v. Home Loan Servs., Inc.*,
   647 F. Supp. 2d 451 (E.D. Pa. 2009) ...................................................................... 8

*Silva v. Smucker Nat. Foods, Inc.*,
   2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ........................................................ 8

*Solomon v. Bell Atl. Corp.*,
   777 N.Y.S.2d 50 (N.Y. App. Div. 2004) ............................................................... 10

*Sosso v. ESB Bank*,
   2016 WL 3855031 (W.D. Pa. July 15, 2016) ......................................................... 13

*Sprint Nextel Corp. v. Middle Man, Inc.*,
   822 F.3d 524 (10th Cir. 2016) ............................................................................... 5

*Szymczak v. Nissan N. Am.*,
   2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ........................................................ 11

*Tindall Corp. v. Mondelez Int'l, Inc.*,
   2015 WL 996847 (N.D. Ill. Mar. 3, 2015) ............................................................ 14

*Tomassini v. FCA U.S. LLC*,
   2015 WL 3868343 (N.D.N.Y. June 23, 2015) ....................................................... 11

*Verde v. Stoneridge, Inc.*,
   2015 WL 5915262 (E.D. Tex. Sept. 23, 2015) ........................................................ 6

*Wade v. Tiffin Motorhomes, Inc.*,
   686 F. Supp. 2d 174 (N.D.N.Y. 2007) .................................................................. 15

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) ................................................................................. 12

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) .................................................................... 5, 6, 7, 8

**STATUTES**

N.Y. G.B.L. § 349 ........................................................................................................ 4, 8, 11

N.Y. G.B.L. § 350 ................................................................................................... 4, 8, 10, 11

**RULES**

Fed. R. Civ. P. 8(d)(3) ...................................................................................................... 15

Fed. R. Civ. P. 23 .............................................................................................................. 14

**REGULATIONS**

16 C.F.R. § 1115.20(a) ................................................................................................... 7, 8

**OTHER AUTHORITIES**

H.R. 4040, 110th Cong. § 231(a) (2008) ........................................................................... 7

## INTRODUCTION

Defendant Ignite USA, LLC ("Defendant") sold water bottles for children labeled "Contigo Kids" with water spouts that were prone to falling off, posing a significant choking hazard. Numerous consumers understood that Defendant's water bottles were safe for children, but they were not. Defendant acknowledges these facts but argues that this case should be dismissed because it has issued a recall. The case law is clear, though, that such recalls do not moot standing—particularly where, as here, the recall would not make consumers whole by providing them with the full monetary and equitable relief that they seek.

Defendant's Rule 12(b)(6) arguments are equally unavailing. Plaintiffs' consumer protection claims survive because it is entirely plausible that consumers would be misled into believing that a product named "Contigo Kids" was appropriate and safe for children to use. And the numerous consumer complaints also indicate that Defendant knew about the defect in the water bottles for quite some time. Plaintiffs' implied warranty claims survive because they provided sufficient notice and privity does not present a bar to relief given the inherent danger of Defendant's defective product. Finally, Plaintiffs may plead unjust enrichment in the alternative.

Plaintiffs allege facts that are simple, clear, and powerful. Defendant promised water bottles that were appropriate and safe for children, but they were not. Consumers, including Plaintiffs, relied on those promises and were thereby cheated out of many millions of dollars. Accordingly, Defendant's motion to dismiss should be denied.

## ARGUMENT

## I. DEFENDANT'S RECALL DOES NOT DEFEAT STANDING

### A. Plaintiffs Have Article III Standing

Defendant argues that Plaintiffs' allegations fail to establish injury in fact because "Plaintiffs are already entitled to a cost-free remedy that gives them exactly what they bargained

for at the time of purchase" and as a result, Plaintiffs "have no cognizable injury and therefore lack standing under Article III." MTD at 6. That is wrong. The recall does not moot Plaintiffs' claims because it would not compensate them for one month or more that they would be without their bottles, or provide them with the monetary or injunctive relief that they seek.

Plaintiffs in this case have Article III standing because they allege that they "would not have bought Defendant's Products if [they] knew that the Products' clear silicone spout can detach, posing a severe choking hazard to her children." FAC ¶¶ 13-14. This is sufficient. *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.").

Defendant argues that, despite these allegations, Plaintiffs lack Article III standing because it has issued a recall that offers consumers a free replacement lid. But courts regularly hold that recalls do not moot consumers' claims for damages and injunctive relief. *See, e.g.*, *Sater v. Chrysler Grp. LLC*, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) (Finding that claims were not moot, despite a recall, because the class sought compensation for "lost use of the Class Vehicles caused by the defect."); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682 (E.D. Pa. 2011) (Recall program did not moot plaintiff's claims because the court could award money damages and order "a more expansive remedy than the one proposed in the Recall."); *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (N.D. Cal. Dec. 2, 2019) (Recall did "not moot Plaintiffs' claims because Plaintiffs seek relief beyond what the Program offers, including monetary damages and injunctive relief"); *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *6 (C.D. Cal. Jan. 27, 2017) ("Kroger and CFR's voluntary recall and refund program does not defeat standing."); *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *7 (S.D. Tex. Sept. 20,

2019) ("Gordon's allegation that the drop-fire defect has decreased his P320's resale value, even with the availability of the Voluntary Upgrade Program, is sufficient to allege economic loss that could be redressed by a judgment ordering compensation.").

Similarly, here, as set out in the Amended Complaint, Defendant's recall does not moot Plaintiffs' claims because it does not compensate them for their time spent without a water bottle[1] or provide them with the monetary damages or injunctive relief that they seek. *See* FAC ¶ 7 ("Defendant has not offered any form of monetary relief to purchasers."); *id.* ¶ 13 ("Defendant's recall would not make Plaintiff Mirza whole because it would not compensate her for the lost use of the water bottle in the interim period during which she would have to wait for a replacement lid, or for the inflated price that she paid for a water bottle designed for children that was actually unsafe for children to use."); *id.* ¶ 14 (same); *id.* ¶ 57 ("Plaintiff [Luchetti] seeks to enjoin the unlawful acts and practices described herein . . . ."); *Id.* ¶ 64.[2] This is

---

[1] According to https://recall.gocontigo.com/, Defendant sends affected consumers an envelope "within 10 business days" so that they can return their lid. Then, once consumers return their lid and Defendant "verif[ies] it is affected"—a process of some indeterminate length— Defendant requires an additional "3 weeks" to send the new lid. This drawn out recall process, which would leave Plaintiffs without a water bottle for five weeks or more, is not what Plaintiffs bargained for when they purchased their water bottles.

[2] The cases that Defendant cites in support of its argument that "loss use" does not confer standing are inapposite. In *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374 (6th Cir. 2015), the lost use alleged related to "time spent communicating" with the dealer, not time spent waiting for a new car during the recall. In addition, "The Sixth Circuit [in *Hadley*] dismissed the claims on standing grounds because, in relevant part, the plaintiffs had failed to allege that they ever stopped using their vehicle as a result of the defect or repairs." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 400 (S.D.N.Y. 2017). "Thus, the Hadley Court did not reach the question of whether a party can recover damages for "lost time" (or, as framed in that case, 'lost use')." *Id. Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815 (C.D. Cal. July 26, 2013) does not address lost use of a product at all. To the contrary, courts regularly hold that lost use of property confers Article III standing. *See, e.g., Sater*, 2014 WL 11412674, at *5; *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 965 (N.D. Ill. 2000) (Motor home purchaser seeking loss of use damages based on coach manufacturer's alleged breach of warranty was only required to show that motor home was unavailable while being repaired); *Cancino v. Yamaha Motor Corp., U.S.A.*, 2008 WL 11353628, at *10 (S.D. Ohio Mar. 17, 2008) (Plaintiffs have adequately "pled that they suffered an economic loss in the form of the loss of the use of their

particularly so for Plaintiff Luchetti, who brings claims under N.Y. G.B.L. §§ 349 and 350,

which provides for statutory damages of $50 and $500, respectively. *Id.* ¶¶ 51-64. Moreover,

Defendant's recall appears purposefully designed to notify as few consumers as possible. *Id.* ¶ 5;

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 416 (S.D.N.Y. 2015) ("If consumers do not realize

the [offer] exists, it cannot be a superior alternative to a class action."). The cases that Defendant

cites at pages 6-7 of it brief are thus each distinguishable as none of those cases involved an

allegation that a recall was insufficient. *Hartley v. SIG Sauer, Inc.*, No. 4:18-cv-00267-HFS

(W.D. Mo.) (ECF No. 41) ("[T]he Court notes that this case is different in several respects from

*Hadley v. Chrysler Group LLC*, 2014 WL 988962 (E.D. Mich. Mar. 13, 2014), relied on by

defendant because plaintiffs here allege that the defect has not been cured by the Voluntary

Upgrade.").

Defendant argues that its recall nevertheless moots Plaintiffs' claims because it is

irrelevant that they "may have preferred to receive a refund rather than a replacement . . . ."

MTD at 7. That is incorrect. Courts around the country routinely hold that a unilateral "remedy"

of the Defendant's choosing does not defeat standing. *See In re Mattel, Inc.*, 588 F. Supp. 2d

1111, 1117 (C.D. Cal. 2008) ("The Court knows of no authority for the proposition that a

defendant can defeat a plaintiff's claim on standing grounds through the unilateral offering of a

remedy of the defendant's choosing."); *Olmos v. Harbor Freight Tools USA, Inc.*, 2018 WL

8804820, at *5 (N.D. Cal. Dec. 24, 2018) (same); *see also Leonard v. Abbott Labs., Inc.*, 2012

WL 764199, at *26 (E.D.N.Y. Mar. 5, 2012) ("there is no bar preventing plaintiffs from forgoing

compensation through a voluntary refund program in order to pursue their claims in a consumer

---

vehicles."); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 2007
WL 2421480, at *4 (E.D. Mich. Aug. 24, 2007) ("The fact that Plaintiffs were without the use of
their SCD Switch for a period of time is undisputed. This deprivation of use forms the basis of
the Loss of Use Plaintiffs' claims. Such loss of use is a recognizable claim.").

class action.  In contrast . . . the conditions of the Recall program were not part of the 'benefit-of-the-bargain' when they purchased the product."); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) ("Because the recalls, even those sufficient to remedy the defects, do not compensate [the] [p]laintiffs fully for the damages sought here, the Court declines to exercise its discretion to dismiss the remaining claims as prudentially moot.").

### B.     The Prudential Mootness Doctrine Is Inapplicable

Defendant also argues that even if the Court finds that Plaintiffs have Article III standing, it should invoke the prudential mootness doctrine to hold that "plaintiff's claims are, in effect" worthless" given its recall.  MTD at 9.  This is incorrect.  Prudential mootness does not apply here because Plaintiffs are seeking damages.  In addition, the recall will not make Plaintiffs whole and it has no legal effect.

"[B]ecause prudential mootness is an equitable doctrine, courts have held that the doctrine should apply only to 'claims for equitable relief' which 'appeal to the remedial discretion of the courts.'"  *Philips v. Ford Motor Co.*, 2016 WL 693283, at *7 (N.D. Cal. Feb. 22, 2016) (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012)[3]) (declining to apply the prudential mootness doctrine where plaintiff sought damages in addition to injunctive and declaratory relief); *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 529 (10th Cir. 2016) ("Ordinarily an action can become prudentially moot only when the claim involves prospective equitable or declaratory relief.  By definition, an award of nominal damages involves a remedy that is 'legal,' not 'equitable.'  Thus, the doctrine of prudential mootness would ordinarily not apply.") (citations omitted).[4]

---

[3] In *Winzler*, plaintiff sought only injunctive relief.

[4] In addition, no court in the Seventh Circuit has ever applied the prudential mootness doctrine in the context of a consumer class action, and this Court should decline to do so as well.  *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *7 (N.D. Cal. Dec. 2, 2019) ("The Ninth

But even if the prudential mootness doctrine can be applied to cases involving damages, it is inapplicable here. In *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012), the case upon which Defendant relies most heavily, there was no allegation that the recall at issue was ineffective in any respect. But here, as set out above, Defendant's recall does not make consumers whole because it does compensate them for their lost time without a water bottle, does not provide them with monetary damages or injunctive relief, and lacks any meaningful notice program. *Philips*, 2016 WL 693283, at *8 (Rejecting application of the prudential mootness doctrine because plaintiffs "request[ed] relief—damages for losses in market value and reimbursement without regard to a specific deadline—that Ford's recall [did] not provide."); *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (Unlike in other cases, "Plaintiffs allege that the [recall] Program is ineffective."); *Verde v. Stoneridge, Inc.*, 2015 WL 5915262, *4 (E.D. Tex. Sept. 23, 2015) (Declining to apply the prudential mootness doctrine, even though defendants had announced that they would voluntarily undertake a National Highway Traffic Safety Administration ("NHTSA")-supervised recall, because "an incomplete offer that does not meet plaintiff's full demand does not render claims moot."); *Sater*, 2014 WL 11412674 (Holding that the prudential mootness doctrine did not apply, despite NHTSA-supervised recall because a lawsuit would "afford[] relief the recall does not provide."); *McCabe v. Daimler Ag*, 2015 WL 11199196, at *5 (N.D. Ga. Aug. 19, 2015) ("Given that the extended warranty offered by MBUSA does not provide Plaintiffs with complete relief in this case, the Court declines to exercise its discretion to dismiss Plaintiffs' claims under the doctrine of prudential mootness.").

---

Circuit has applied prudential mootness only in the bankruptcy context, when there are no assets left to distribute. Thus, the court will not apply the prudential mootness doctrine here in the context of a consumer protection and breach of warranty case.") (citations and quotation marks omitted).

*Winzler* also presents a very different case because the recall there was overseen by

NHTSA and the defendant was obligated by statute to undertake certain related measures, such

as notice to all consumers. *Winzler*, 681 F.3d at 1209. Here, on the other hand, Defendant's

recall "is being conducted in conjunction with the U.S. Consumer Products Safety Commission,"

MTD at 1, which means there are no set standards for notice or compensation and there are

essentially no ramifications for noncompliance. Under CPSC regulations, a company may

submit a voluntary "corrective action plan" to correct an alleged violation of the consumer

product safety laws, with the relevant regulation stating as follows:

> A corrective action plan is a document, signed by a subject firm,
> which sets forth the remedial action which the firm will voluntarily
> undertake to protect the public, **but which has no legally binding
> effect**. The Commission reserves the right to seek broader
> corrective action if it becomes aware of new facts or if the
> corrective action plan does not sufficiently protect the public.

16 C.F.R. § 1115.20(a) (emphasis added). On July 31, 2008, Congress passed the Consumer

Product Safety Improvement Act of 2006, which clarifies that "[i]n accordance with the

provisions of [the CPSA], the [CPSC] may not construe any such Act as preempting any cause of

action under State or local common law or State statutory law regarding damage claims." *See*

H.R. 4040, 110th Cong. § 231(a) (2008) (emphasis added). As such, Defendant's voluntary

recall does not warrant application of the prudential mootness doctrine:

> Defendants' reliance on *Winzler v. Toyota Motor Sales U.S.A.,
> Inc.*, 681 F.3d 1208 (10th Cir. 2012) is misplaced. *Winzler* is a
> prudential mootness case where the recall process at issue was
> overseen by the National Highway Transportation Safety
> Administration ("NHTSA"), and the defendant was obligated by
> statute to undertake certain measures in instituting that recall. *Id.*
> at 1209. Here, Plaintiffs do not allege, and there is no judicially
> noticeable evidence of, a "remedial promise from a coordinate
> branch in hand," *id.* at 1210, but simply a voluntary recall effort
> initiated by Standard and Hyland's without any detail as to the
> procedures followed or the presence of "the great grinding gears of
> a statutorily mandated and administratively overseen national

> recall process," *id.* at 1211. Standard and Hyland's are not alleged
> to have a statutory obligation to notify consumers of the defect, nor
> are they alleged to have a "statutory duty to remedy the defect or
> noncompliance." *Id.* Furthermore, in *Winzler*, the plaintiff
> requested that (1) Toyota notify all owners of the defect and (2)
> Toyota repair or replace any faulty parts at no cost; the recall did
> both of these things. *See id.* Here, by contrast, Plaintiffs seek to
> recover damages in addition to declaratory and injunctive relief.
> (See generally Am. Compl.) Those damages, as discussed above,
> may exceed the amount offered by recall based on the availability
> of statutory damages.

*O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 524 n.4 (S.D.N.Y. 2018).

Unsurprisingly, Defendant does not cite to a single case in which prudential mootness was

applied in a case involving a CPSC recall. That is because "[t]he CPSC regulations at issue

explicitly state that actions taken in a voluntary corrective action plan have 'no legally binding

effect,' and that the CPSC 'reserves the right to seek broader corrective action.'" *In re Mattel,

Inc.*, 588 F. Supp. 2d at 1115 (citing 16 C.F.R. § 1115.20(a)).

## II.    PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF CONSUMER PROTECTION STATUTES

### A.    Plaintiffs Sufficiently Allege That "Contigo Kids" Misleads Consumers Into Thinking Defendant's Products Are Safe For Kids To Use

Defendant argues that "Contigo Kids" is "simply the product's name" and is not

actionable as a concrete representation. MTD at 12. That is wrong. Just as courts have found

regarding many other products, the name of a product can deceive reasonable consumers.

Under N.Y. G.B.L. §§ 349 and 350, Plaintiff need only allege that Defendant engaged in

misleading, consumer-oriented conduct that caused injury. *See, e.g.*, *Silva v. Smucker Nat.

Foods, Inc.*, 2015 WL 5360022, at *9 (E.D.N.Y. Sept. 14, 2015). Similarly, a claim of deceptive

conduct under the UTPCPL requires an allegation of "conduct that is likely to deceive a

consumer acting reasonably under similar circumstances." *Seldon v. Home Loan Servs., Inc.*,

647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). Here, Plaintiffs' allegations meet both standards. It is

entirely plausible that a reasonable consumer seeing a water bottle labeled "Contigo Kids" would understand that the bottle was appropriate and safe for children to use.

That "Contigo Kids" is the name of the product at issue is irrelevant. In fact, numerous courts have held that the name of a product can constitute a representation about the product's characteristics. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (Plaintiffs adequately alleged that a product called "Aveeno Active Naturals" was misleading because it was not actually natural); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) ("The FDA has recognized that product names such as "vitaminwater" can be deceptive . . . .); *Korte v. Pinnacle Foods Grp., LLC.*, 2018 WL 1508855, at *4 (S.D. Ill. Mar. 27, 2018) ("[W]hether a reasonable consumer would be deceived by the products' name and label and a reasonable consumer's understanding of the terms 'E.V.O.O.' and 'Made With Extra Virgin Olive Oil'—are not so clear-cut."); *Porter v. NBTY, Inc.*, 2019 WL 5694312, at *3 (N.D. Ill. Nov. 4, 2019) ("Here, the product name, 'Body Fortress Super Advanced Whey Protein,' . . . may have misled plaintiffs into believing that the only type of protein in the product was whey."); *Gubala v. CVS Pharmacy, Inc.*, 2016 WL 1019794, at *12 (N.D. Ill. Mar. 15, 2016) ("Plaintiff has adequately alleged a disputed issue of fact as to whether the Product name is misleading in that it suggests that the protein in the Product is comprised exclusively of pure whey protein."); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *23 (C.D. Cal. Sept. 4, 2014) ("[I]t is plausible that a reasonable consumer would be deceived or misled" by product name "5-hour ENERGY."). Against this backdrop, Defendant's argument makes no sense.

9

### B.      Plaintiffs Sufficiently Allege An Actionable Omission

Defendant argues that Plaintiffs' claims under Pennsylvania's UTPCPL and New York's GBL fail because "the FAC contains no factual allegations establishing that Ignite knew of the alleged defect at the time Plaintiffs purchased their water bottles." MTD at 14. That is wrong.

First, Defendant misstates the law. Pennsylvania's UTPCPL "<u>does not require proof of the Defendant's knowledge</u>." *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011); *see also id.* ("The UTPCPL merely requires a plaintiff to show that the Defendant caused the *likelihood* of confusion concerning the goods in question. The result is a lower hurdle for the plaintiff to surmount.") (emphasis in original). Similarly, actionable omissions under New York's GBL do not require allegations of scienter. *See Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015) ("A plaintiff can state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); *POM Wonderful LLC v. Organic Juice USA, Inc.*, 2010 WL 3912222, at *3 (S.D.N.Y. Sept. 29, 2010) ("Claims under G.B.L. § 350 require a showing that 'the defendant made …. omissions that were likely to mislead a reasonable consumer under the circumstances.'") (quoting *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 54-55 (N.Y. App. Div. 2004)).

Regardless, Plaintiffs allege that Defendant had exclusive knowledge of the Products' defect and omitted this material information from Plaintiffs and class members. *See* FAC ¶ 3 ("Defendant had exclusive knowledge of the defect, which was not known to Plaintiffs or Class Members."); *id.* ¶ 9 ("Defendant sold the Products to unsuspecting consumers upon the affirmative misrepresentation and/or material omission that the Products were fit for their intended purpose as water bottles safe for children to use. None of these customers would have purchased the Products had they known of this highly material fact that the Products' spout is

prone to detachment, thus posing a severe choking hazard to children.").[5]  That is sufficient.

*Szymczak v. Nissan N. Am.*, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011) (denying

motion to dismiss GBL claim where the plaintiffs alleged that manufacturer failed to disclose a

defect and that the failure to disclose was likely to mislead a reasonable consumer); *Garcia v.

Chrysler Group LLC*, 2015 WL 5123134, at *2, 21 (S.D.N.Y. Sept. 1, 2015) (denying motion to

dismiss GBL claim where the plaintiffs alleged that manufacturer knew that vehicle component

system was prone to sudden failure and failed to disclose the defect to consumers); *Tomassini v.

FCA U.S. LLC*, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) ("[A] business's failure to

disclose to consumers' material, relevant information the business alone possesses is actionable

under [GBL] § 349 without reference to any special relationship between the consumer and the

business.") (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85

N.Y.2d 20, 26 (1995)).

Second, even if it were required, Plaintiffs' FAC gives rise to a plausible inference that

Defendant knew about the defect at the time Plaintiffs purchased their Products.  That is because

"Defendant has known about the defective nature of the Products long before they issued the

recall, and well before Plaintiffs purchased the Products.  Defendant has admitted that it received

149 reports of the spout detaching, including 18 reports of spouts ending up in children's

mouths."  FAC ¶ 8 (emphasis added).  It strains credulity to think that Defendant was unaware of

the Products' defect despite an onslaught of consumer complaints in the 15-month span during

which the Products were sold.  Construing Plaintiffs' allegations "in the light most favorable to

---

[5] *See also* FAC ¶ 55 ("The foregoing deceptive acts and practices are misleading in a material
way because they fundamentally misrepresent the characteristics of the Products to induce
consumers to purchase same.  Moreover, had the omitted information been disclosed, Plaintiff
Luchetti would have been aware of it and not purchased the Product.").

the nonmoving party," that is sufficient. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496, 502 (7th Cir. 2011).

      **C.    The Economic Loss Rule Does Not Bar Plaintiffs' Claims**

      Defendant argues that the economic loss doctrine bars Plaintiff Mirza's claims under Pennsylvania Law. That is incorrect. As one district court explained, *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002)—the principle case upon which Defendant relies—"no longer has any vitality."

> When it was decided, there was no guidance from Pennsylvania courts, leading the Third Circuit to predict how Pennsylvania's highest court would rule. *Werwinski,* 286 F.3d at 675. The Pennsylvania courts, the highest court and the intermediate appellate courts, had not yet addressed the issue. Since *Werwinski* issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims.

*Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427 (E.D. Pa. 2015) (emphasis added); *see also Greene v. Sears Prot. Co.*, 2017 WL 1134484, at *3 (N.D. Ill. Mar. 27, 2017) (declining to dismiss UTPCPL claims based on the economic loss doctrine); *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) (UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence.); *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("*Dixon's* UTPCPL claim is not barred by the economic loss doctrine."); *Lovelace v. Nationwide Mut. Ins. Co.*, 2018 WL 3818911, at *2 (E.D. Pa. Aug. 10, 2018) ("Since *Werwinski* was decided sixteen years ago, the Pennsylvania Superior Court has disagreed with the Third Circuit's holding in *Werwinski*. . . . This Court concludes that the clear pronouncement by the Pennsylvania Superior Court in *Knight*—subsequently followed in *Dixon*—constitutes a clear change in law that has proved incorrect the Third Circuit's prediction in *Werwinski*."); *Busch v. Domb*, 2017 WL 6525779, at

*4 (E.D. Pa. Dec. 21, 2017) ("The Court will follow the rulings of the Pennsylvania Superior Court to hold that the economic loss doctrine does not apply to a UTPCPL claim."); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 415 (E.D. Pa. 2016) ("[N]ow that the Superior Court has twice rejected *Werwinski*, I refuse to dismiss the UTPCPL claim on the basis of the economic loss doctrine . . . ."); *Kerr v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 5809989, at *5 (W.D. Pa. Nov. 6, 2018) ("This Court is persuaded that it should also follow the precedents of *Knight* and *Dixon*. Therefore, the Plaintiff's UTPCPL claim is not barred by the economic loss doctrine."); *Sosso v. ESB Bank,* 2016 WL 3855031, at *7 (W.D. Pa. July 15, 2016) ("As such, this Court concludes that it is no longer bound by *Werwinski* and is required to follow the precedential ruling of the Pennsylvania Superior Court in *Knight* which held that claims brought under the UTPCPL are not barred by the economic loss doctrine.").

Although Defendant insists "the Third Circuit recently signaled that *Werwinski* remains good law notwithstanding the 2013 Pennsylvania state court case," MTD at 16, that too is incorrect. Not only does *Berkery v. Verizon Comm'ns Inc.*, 658 F. Appx. 172 (3d Cir. 2016) fail to address the state law cases contradicting *Werwinski*, but that case expressly states that it "does not constitute binding precedent" pursuant to Third Circuit Internal Operating Procedures 5.7. Moreover, many of the decisions declining to apply *Werwinski* post-date the Third Circuit's decision in *Berkery*.

## III.     PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY

### A.     A Choice-Of-Law Determination Is Not Necessary At This Stage

Defendant argues that Plaintiffs' implied warranty claims should be dismissed because "the complaint fails to identify the jurisdiction(s) under which they brings [sic] their individual claims." MTD at 16-17. That is incorrect. As another court in this district explained, "[t]hat argument is meritless; because Kostovetsky resides in Illinois, Illinois law likely applies . . . ."

13

*Kostovetsky v. Ambit Energy Holdings, LLC*, 2016 WL 105980, at \*8 (N.D. Ill. Jan. 8, 2016). At this stage of the proceedings, a choice-of-law analysis is premature. *Moore v. Magiera Diesel Injection Servs., Inc.*, 2019 WL 2502029, at \*4 (N.D. Ill. June 17, 2019) ("[T]he court will not at this stage determine which State's choice-of-law rules apply, let alone which State's substantive law governs the state law claims."); *Tindall Corp. v. Mondelez Int'l, Inc.*, 2015 WL 996847, at \*3 (N.D. Ill. Mar. 3, 2015) ("At this stage of the case, the choice of law does not matter"). Still, to the extent that the Court requires Plaintiffs to specify a jurisdiction for each of their claims, Plaintiffs can easily amend to do so.[6]

### B. Plaintiffs Provided Sufficient Notice

Next, Defendant argues "under New York law, Plaintiff Luchetti's breach of implied warranty of merchantability claim fails as a matter of law" because "she did not provide notice to Ignite as required by New York law."[7] That is wrong. Here, "the notice provision . . . is inapplicable . . . because Rule 23 governs, and Rule 23 contains no notice requirement." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997); *see also Mazzanti v. Gen. Elec. Co.*, 2017 WL 923905, at \*6, n.4 (D. Conn. Mar. 7, 2017) ("To the extent that pre-suit notice is required . . . the state notice provision is preempted by Federal Rule of Civil Procedure 23.").

Here, nonetheless, Defendant received sufficient notice because it received a notice letter two months before Plaintiffs filed their Amended Complaint. Moreover, the initial complaint itself (ECF No. 1) is sufficient to place Defendant on notice of its breaches of warranty. *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 582 (Bankr. S.D.N.Y. 1999) ("The Proposed Amended

---

[6] Defendant advances the same argument against Plaintiffs' claims for unjust enrichment, but the same reasoning applies there as well.

[7] Notably, Defendant does not argue for the dismissal of Plaintiff Mirza's implied warranty claim based on notice or privity. At minimum, Plaintiff Mirza's implied warranty claim should proceed.

Complaint sufficiently puts each Defendant on notice as to the claims against it."); *Marin v. Apple-Metro, Inc.*, 2017 WL 4950009, at *10 (E.D.N.Y. Oct. 4, 2017) ("Accordingly, the Court finds that the Dove Complaint provides sufficient allegations to put defendants on notice of plaintiffs' claim…").

### C.     Privity

Defendant also argues that Plaintiff Luchetti's implied warranty claim fails because "she is not in privity with Ignite." MTD at 17-18. But Defendant ignores that "'New York recognizes an exception to [the privity] principle where the product in question is a thing of danger.'" *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y. 2007) (quoting *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (citing *Goldberg v. Kollsman Instr. Corp.*, 12 N.Y.2d 432, 436 (1963)). More specifically, "where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." *Id.* Here, the Products are water bottles designed specifically for children yet their spouts are defective and detach into children's mouths, that by Defendant's own admission "pos[e] a choking hazard to children." FAC ¶ 2; *see also* Swaney Decl., Ex. A (ECF No. 22-3) (admitting the Products pose choking hazards to children). Accordingly, there is no dispute the Products are "things of danger," and thus fall within the privity exception.

## IV.     PLAINTIFFS MAY PLEAD UNJUST ENRICHMENT IN THE ALTERNATIVE

Defendant argues that Plaintiff Luchetti's unjust enrichment claim under New York law should be dismissed because it "simply duplicates" her other claims. MTD at 20. That is incorrect. Fed. R. Civ. P. 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." As such, courts applying New York law regularly

permit unjust enrichment claims to be pled in the alternative. *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) ("[E]ven though Plaintiff[] may not ultimately <u>recover</u> under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to <u>plead</u> such claims in the alternative.") (emphasis in original).

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety. To the extent the Court deems any of Plaintiffs' allegations insufficient, Plaintiffs respectfully request leave to amend.

Dated: December 31, 2019 **CARLSON LYNCH LLP**

By: */s/ Katrina Carroll*
Katrina Carroll

Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312.750.1265
E-Mail: kcarroll@carlsonlynch.com

**BURSOR & FISHER, P.A**
Scott A. Bursor (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiffs*
*and the Proposed Classes*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, hereby certifies that a true and correct unredacted copy of the foregoing **Plaintiffs' Opposition to Defendant's Motion to Dismiss** was served this 31st day of December, 2019, on all counsel of record via email.

*/s/ Katrina Carroll*
Katrina Carroll
