# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOMINIQUE MIRZA, and TARA LUCHETTI, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>IGNITE USA, LLC,<br><br>        Defendant. | Case No. 1:19-cv-05836<br><br>Hon. Charles P. Kocoras |

## REPLY IN SUPPORT OF IGNITE USA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

I.  **INTRODUCTION**

Plaintiffs and the proposed class already have a remedy in hand (free replacement lids for their water bottles) providing them with what they bargained for; therefore, any alleged "benefit-of-the-bargain" or "overpayment" injury has already been redressed by Ignite's voluntary recall and cannot provide Plaintiffs with standing. Plaintiffs try to avoid this by vaguely arguing the recall is "insufficient" (Opp. at 4), but Plaintiffs do not allege they availed themselves of the recall remedy and thus cannot plausibly claim such "insufficiencies" failed to redress their supposed injury. Moreover, the "insufficiencies" about which Plaintiffs complain are illusory and immaterial. Plaintiffs argue the recall will not provide them with the "injunctive relief that they seek" (Opp. at 2)—but the FAC's prayer for relief does *not* include injunctive relief, nor do Plaintiffs anywhere articulate what they seek to enjoin. Plaintiffs also argue the recall fails to compensate them for the "lost use" of their water bottles, but Plaintiffs have chosen not to receive the free replacement lid to make their bottles usable; they cannot create an "injury" by refusing to accept an existing remedy. At most, the only "injury" not purportedly remedied by the recall is Plaintiffs' "lost time without a water bottle" for the brief period they would have wait to receive the free replacement lid (if they chose to receive it). Opp. at 6.  But that "injury" (if it is one at all) is insufficient to justify this putative class action. Courts have made clear that class actions such as this one, which provide little or no relief not already available through the recall, are not only doomed to failure under Rule 23 but also impose an undue burden on the defendant and the courts alike.

Plaintiffs also have no answer to Ignite's argument that the FAC fails to state claims under Pennsylvania and New York law. Plaintiffs' argument that the words "Contigo Kids" constitute an actionable misrepresentation fails the red-face test. Plaintiffs cite cases holding that a product's name can be actionable—but only if the name contains a representation about the product's

characteristics or ingredients (*e.g.*, "Active Naturals," which were alleged to be "unnatural"). That is precisely Ignite's point: the words "Contigo Kids" do not constitute a representation about a characteristic of the water bottles that can be proven true or false—and thus they cannot be the basis for a false advertising claim. Indeed, Plaintiffs claim is based on their belief that the words "Contigo Kids" *implied* that the product was "safe." But false advertising claims under the UTPCPL and NY GBL §§ 349 and 350 must be based on the plain meaning of the words at issue, not on some implicit belief that the product would be "safe." In the absence of an *actual* representation that the product was safe or free from all defects, the mere purchase of a product containing an alleged safety defect does not give rise to a claim for "false advertising."

Nor do Plaintiffs demonstrate that the FAC adequately alleges fraudulent omission claims. Plaintiffs attempt to turn logic on its head, arguing that Ignite can be liable for failing to disclose information about which it had no knowledge. But the cases Plaintiffs cite in support of this proposition—none of which involved non-disclosure of an alleged product defect—are inapposite. Nor can Plaintiffs rely on conclusory allegations that Ignite "knew" of the alleged defect before they bought their water bottles. Pleading fraud claims requires more than intoning the elements of the claim with boilerplate language lacking factual support.

Plaintiffs also fail to answer Ignite's arguments regarding their generic breach of warranty claim. They argue it is "premature" for the Court to engage in a "choice of law" analysis, but that misses the point. Without specifying which jurisdiction's law they are invoking, the FAC fails to state a claim under Rule 12(b)(6). Their arguments regarding Plaintiffs' Luchetti's warranty claim under New York law also miss the mark. On the bottom line, Plaintiffs' attempt to paint a manufacturing mishap as a grand scheme of consumer fraud falls short. The FAC should be dismissed for lack of standing and failure to state a claim.

## II. PLAINTIFFS FAIL TO DEMONSTRATE THEY HAVE ARTICLE III STANDING

Plaintiffs argue that, notwithstanding Ignite's commitment to provide them—and all putative class members—with a free remedy that gives them precisely what they bargained for, they have nevertheless been "injured" because they would not have purchased the water bottles if they knew of the alleged defect. Opp. at 2. Yet Plaintiffs do not even address the primary authority upon which Ignite relies, in which a federal court recently held there is "no plausible theory of economic loss" based on the purchase of allegedly defective products where a recall remedy would allow the products to "perform as they would without the defect." *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6-7 (N.D. Cal. Aug. 21, 2019).

Instead, Plaintiffs cite other cases in which courts found a recall program did not deprive purchasers of standing (Opp. at 2), but in those cases the recall programs were alleged to be insufficient because they failed to fix the defect and/or did not redress other financial losses caused by the defect. *See Sater v. Chrysler Grp. LLC*, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) (plaintiffs alleged "the recall '[does] not cure the Defects'" and that the defects caused "excessive wear" to their vehicles); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682 (E.D. Pa. 2011) (plaintiffs alleged that "[n]ot all [allegedly defective vehicles] within the proposed class are covered by the recall"); *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (N.D. Cal. Dec. 2, 2019) ("Plaintiffs sufficiently plead that the Program is ineffective in remedying the allegedly defective design of the butterfly keyboards" and did not reimburse them for "out-of-pocket expenses incurred while seeking repairs for their keyboards."); *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *6 (C.D. Cal. Jan. 27, 2017) (allegation that defendant misled federal regulators regarding years of "flagrant food safety violations" that led to listeria outbreak was sufficient to "raise the specter that dismissal here on mootness grounds may leave the defendant free to return to [its] old ways"); *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *7 n.1 (S.D.

Tex. Sept. 20, 2019) (allegation that product had "a loss of resale value" that was not addressed by recall was sufficient to confer standing). Here, however, the FAC contains no allegation that Ignite's recall fails to cure the detachment issue, nor do Plaintiffs allege they incurred any actual out-of-pocket loss or other damages.

In an attempt to bring their allegations within the holdings of these cases, Plaintiffs vaguely assert that Ignite's recall is "insufficient" (Opp. at 4), but that cannot provide them with standing because they have chosen not to participate in the recall. Thus, Plaintiffs cannot plausibly contend that any such "insufficiencies" in the recall failed to fully redress their alleged injuries. Regardless, Plaintiffs fail to identify any material insufficiency in the recall. Although Plaintiffs vaguely assert that the recall does not provide "the injunctive relief that they seek" (Opp. at 2), the FAC does not include a request for injunctive relief and Plaintiffs nowhere articulate what type of injunction they want or how that would redress some present or future injury to them.[1] Plaintiffs also argue the recall does not "compensate" them for "their lost time without a water bottle." Opp. at 6. But as Ignite made clear in its opening brief, that injury (if it is even an injury at all) is self-inflicted because Plaintiffs can eliminate that injury entirely by obtaining the recall remedy; thus, that "injury" cannot be a basis for standing. (Mot. at 8, citing *Sugasawara*, 2019 WL 3945105, at *6 ("To the extent [plaintiff] has not [availed himself of the recall remedy], he cannot thereby manufacture standing.")). Indeed, the *Gordon* case cited by Plaintiffs also found that a plaintiff's choice to stop using the product due to the defect was a "self-inflicted" injury and thus insufficient to establish standing, "because he has the option to upgrade his [product] for free, fixing the [alleged defect]." 2019 WL 4572799, at *7 n.1.

---

[1] Plaintiffs assert that Ignite's recall "appears purposefully designed to notify as few consumers as possible" (Opp. at 4), but the fact that they filed this putative class action ***two days*** after the recall was announced belies that contention.

The only "injury" that is not purportedly remedied by Ignite's recall is that Plaintiffs will be briefly without the use of their water bottles while waiting for their free replacement lids to arrive (which, again, Plaintiffs have not chosen to obtain). Opp. at 4. Even if enduring a short time without a water bottle were an "injury" sufficient to confer standing, the Court should decline to exercise jurisdiction because the relief Plaintiffs seek "lacks sufficient utility to justify a decision . . . on the merits," thus rendering the case prudentially moot. *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). Plaintiffs argue the prudential mootness doctrine is inapplicable because they seek money, and the doctrine applies "only to 'claims for equitable relief.'" Opp. at 5. But Ignitie's larger point is that this putative class action—and the immense transactional costs associated with it—cannot be justified given the trivial additional relief Plaintiffs seek beyond that already available to the propose class. The costs of quantifying Plaintiffs' "damages" caused by "time without a water bottle" while waiting for the free replacement would alone outstrip the total amount of money that would be ultimately distributed to them and putative class members. Moreover, for a variety of reasons, most putative class members would have no time-without-a-water-bottle injury at all, making individual inquiries necessary to determine whether each class member is entitled to a remedy, thus defeating commonality under Rule 23. Indeed, as one case upon which Plaintiffs rely made clear, even if the recall does not defeat standing, there is little point to a class action such as this one: "The wisdom of the Plaintiffs' decision to forgo the Recall program is questionable, particularly in light of the number of cases that have denied class certification in consumer class actions because a voluntary recall and/or refund program provided a superior method of compensating the putative class members." *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *27 (E.D.N.Y.

Mar. 5, 2012). Plaintiffs' desire to be paid money for the time spent waiting to receive the free replacement lid is simply not a sufficient "injury" to justify this proposed class action.

### III. PLAINTIFFS' CLAIMS UNDER THE UTPCPL AND NY GBL MUST BE DISMISSED UNDER RULE 12(b)(6)

#### A. Plaintiffs' Misrepresentation Claims Fail as a Matter of Law Because They Fail to Identify an Actionable Representation Upon Which They Relied

Plaintiffs do not address Ignite's argument or authorities that, under both the UTPCPL and NY GBL §§ 349 and 350, the name "Contigo Kids" is nonactionable because those words are not a factual description of the "specific characteristics of [the] product that are subject to measurement and are therefore testable." *Bolus v. Nationwide Prop. & Cas. Co.*, 2018 WL 1474669, at *3 (M.D. Pa. Mar. 26, 2018) (internal quotation marks omitted). Instead, Plaintiffs argue that "Contigo Kids" is an actionable misrepresentation because reasonable consumers would understand those two words to mean the water bottles were "safe for children to use" (Opp. at 9), but there is no basis in law or common sense to support this contention.

First, the cases cited by Plaintiffs (Opp. at 9) actually prove Ignite's point that an actionable representation must describe some characteristic of the product that is objectively measurable or testable. *See Goldemberg v. Johnson & Johnson Consumer Co.*, 8 F. Supp. 3d 467, 471 (S.D.N.Y. 2014) (product named "Aveeno Active Naturals" alleged to be misleading because "most of the ingredients are synthetic and unnatural"); *Korte v. Pinnacle Foods Grp., LLC*, 2018 WL 1508855, at *1-2 (S.D. Ill. Mar. 27, 2018) (product named "Wish-Bone E.V.O.O. Dressing" alleged to be misleading because the dressing is "comprised mainly of water and cheap soybean oil, and not premium E[xtra] V[irgin] O[live] O[il]"); *In re 5-Hour Energy Marketing & Sales Practices Litig.*, 2014 WL 5311272, at *2 (C.D. Cal. Sept. 4, 2014) (product named "5-Hour Energy" alleged to be misleading "because it does not provide five hours of energy"); *Gubala v. CVS Pharm., Inc.*, 2016 WL 1019794, at *1 (N.D. Ill. Mar. 15, 2016) (product named "Whey Protein Powder" alleged to

be misleading because some of the protein was "not made up of whey protein"); *Porter v. NBTY, Inc.*, 2019 WL 5694312, at *1 (N.D. Ill. Nov. 4, 2019) (same). These cases stand for the proposition that a product name can be misleading *if* it contains representations that the product has qualities or ingredients that it does not in fact possess. Here, however, the words "Contigo Kids" by themselves say nothing about the characteristics or ingredients of the water bottles, nor do they say anything (either explicitly or implicitly) about the "safety" of the product.

Second, Plaintiffs' argument that they were misled because they understood "Contigo Kids" to mean the product was "safe for children" proves too much. Reasonable consumers always believe the products they purchase will be safe for their intended uses, regardless of the product's name. Thus, under Plaintiffs' logic, any time a product contained an alleged manufacturing defect that potentially made it unsafe, the product was necessarily "falsely advertised." But that is not the law. On the contrary, Ignite cited ample authorities holding that consumers cannot claim "false advertising" based on their belief that the product's brand name carried some implicit representation beyond what the words themselves actually mean. *See, e.g.*, *Hodges v. Apple Inc.*, 640 F. App'x 687, 689 (9th Cir. 2016) ("The name MacBook Pro with Retina display promises only that the computer will have characteristics specified by those words: it says nothing regarding the overall quality of the line or the comparative quality of each unit."); *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 320 (1986) (a "trademark or brand name, alone, is [not] intended to include a representation that the component parts of [a] product are of a particular kind or quality"). Simply put, neither the UTPCPL nor NY GBL §§ 349 and 350 support Plaintiffs' attempt to turn the words "Contigo Kids" into an actionable misrepresentation based on their subjective belief that the words implied the product was "safe."

### B. The FAC Lacks Sufficient Facts to State a Fraudulent Omission Claim

Plaintiffs also fail to answer Ignite's argument that the FAC lacks sufficient allegations to state fraudulent omission claims under the UTPCPL and NY GBL §§ 349 and 350. Plaintiffs make the illogical contention that under Pennsylvania and New York law, Ignite can be held liable for failing to disclose information about which it had no knowledge. Opp. at 10. But as a matter of common sense, Ignite could not have disclosed information it did not know, and Ignite has cited ample authority—which Plaintiffs fail to address—supporting this point. *See Vullings v. Bryant Heating & Cooling Sys.*, 2019 WL 687881, at *6 (E.D. Pa. Feb. 19, 2019) ("Without information to support an inference that Defendants knew of the defect and acted deceptively to withhold that information, Plaintiff has not made out a claim of deceptive conduct under the UTPCPL."); *In re Sling Media Slingbox Ad. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) ("[P]laintiffs pursuing an omission-based claim [under § 349] must plausibly allege[ ] that the . . . [d]efendants had knowledge of the [material information] and failed to disclose or actively concealed such information.") (internal quotation marks omitted).

Plaintiffs lift a quotation from *In re Actiq* to argue that the UTPCPL "does not require proof of the Defendant's knowledge" (Opp. at 10), but that case did ***not*** involve the alleged nondisclosure of a product defect; it involved improper marketing of pharmaceuticals, and the court was analyzing whether the plaintiffs had to demonstrate the defendant's "knowledge" that its marketing activities lacked necessary FDA approvals. *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011). Plaintiffs are flatly wrong to suggest that this case applies to their fraudulent omission claim under UTPCPL. Simply put, under both the UTPCPL and NY GBL §§ 349 and 350 a "defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability." *In re Sling Media*, 202 F. Supp. 3d at 359.

Plaintiffs also argue that the FAC adequately alleges Ignite's knowledge of the alleged defect, but the FAC's boilerplate assertions—without any factual support—that Ignite "knew" of the alleged defect are obviously insufficient to satisfy either Rule 8 or Rule 9(b). As this Court has made clear, "[b]are, conclusory allegations of knowledge and general knowledge are not enough to sustain a claim." *Alexander v. Continental Motor Werks, Inc.*, 1996 WL 79403, at *7 (N.D. Ill. Feb. 16, 1996) (Kocoras, J.). Plaintiffs' accusation in the FAC—that Ignite intentionally put children at risk by misleading consumers into purchasing a product it knew to be unsafe—is extremely serious, which is exactly why Rule 9(b) requires that "[a] plaintiff claiming fraud . . . do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman Sachs Group*, 477 F.3d 502, 508 (7th Cir. 2007) (Rule 9(b)'s "heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do"). To satisfy Rule 9(b), Plaintiffs need *factual* support for the allegation that Ignite knew of the alleged defect at the time they bought their water bottles; empty boilerplate accusations will not do.

The only *fact* Plaintiffs mention is that Ignite received reports of the water bottle spout detaching (Opp. at 11), but this is also insufficient to satisfy Rule 9(b). First, reports of the spout detaching would not necessarily indicate to Ignite that the water bottles had a *defect*; products can break or malfunction for many different reasons (*e.g.*, misuse or external damage). *See, e.g.*, *Williams v. Yamaha Motor Corp. U.S.A.*, 106 F. Supp. 3d 1101, 1115 (C.D. Cal. 2015) (holding that customer complaints "[b]y themselves are insufficient to show that [the manufacturer] had knowledge of the defect"). Second, the FAC does not allege when Ignite received these reports, and "courts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer

was aware of the defect *at the time of sale.*" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (emphasis original). Thus, Plaintiffs cannot establish that Ignite knew of the alleged defect at the time they bought their water bottles by referencing undated customer reports of the spout detaching. Under Rule 9(b), more is required—and because the FAC lacks any additional factual allegations, Plaintiffs' fraudulent omissions claim must be dismissed.

### C. Plaintiff Mirza's UTPCPL Claim Is Barred By the Economic Loss Doctrine

As Ignite informed the Court in its moving papers, there is a split among courts in Pennsylvania regarding whether the economic loss doctrine applies to claims brought under the UTPCPL. Mot. at 15-16. But Plaintiffs are wrong that the Third Circuit's holding in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), that the economic loss rule applies to UTPCPL claims "no longer has any vitality" (Opp. at 12); courts continue to apply *Werwinski* to claims like those brought here, which seek only economic damages based on the purchase of a product that did not meet the customer's expectations. *See, e.g.*, *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 386 (E.D. Pa. 2019) (holding that district courts "remain bound by the Third Circuit's holding in *Werwinski* and the economic loss doctrine bars the [plaintiff's] UTPCPL claim"). Because the Third Circuit's decision *Werwinski* is still good law, this Court should dismiss Plaintiff Mirza's UTPCPL claim.

Moreover, the facts of this case illustrate why the economic loss doctrine should apply to claims such as Mirza's. First, it is undisputed that the alleged defect in Mirza's water bottle did not cause physical injury or property damage, and she only seeks damages for her lost "benefit of the bargain." Under these circumstances, "warranty law sufficiently protects the purchaser by allowing [her] to obtain the benefit of [her] bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of [her] bargain." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 (1986). Thus, tort remedies are unnecessary.

Second, Plaintiffs' own allegations reveal that their tort-based claims are nothing more than gussied-up causes of action for breach of warranty. *See* FAC ¶¶ 13 and 14 (alleging that Plaintiffs "understood ["Contigo Kids"] as an *implied warranty* that the Product was safe") (emphasis added). Thus, Plaintiffs admit that their supposed "false advertising" claim is not meaningfully different than their implied warranty claim. This is precisely why the economic loss doctrine limits the ability to seek duplicative tort remedies where—as here—"the only injury is to the product itself and 'the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" *Werwinski*, 286 F.3d at 671 (quoting *East River*, 476 U.S.at 872). On the bottom line, the allegations in the FAC indicate that Plaintiffs purchased a product that allegedly contained a manufacturing defect, and nothing more. Thus, Plaintiffs' remedy—if any—lies in warranty law, not in tort.

## IV. PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIM MUST BE DISMISSED

### A. The Claim Cannot Proceed Without Notice of Which Jurisdiction's Law Plaintiffs Seek to Apply

Plaintiffs make no attempt to address the authorities cited by Ignite holding that failure to identify which jurisdiction's law applies to their breach of warranty claims requires dismissal. *E.g.*, *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *8 (N.D. Ill. April 18, 2018) (dismissing cause of action for failure to identify the state law upon which it was based). Rather, Plaintiffs argue it is "premature" for the Court to engage in a "choice of law analysis." Opp. at 14. But this is not a "choice-of-law" issue at all—it is a question of whether Plaintiffs have satisfied the basic pleading requirements of Rule 8, which requires them to put Defendants on notice of their claims. The need for Plaintiffs to identify what law they seek to apply is critical under the circumstances here: Plaintiffs (residents of Pennsylvania and New York) bring a single generic "breach of implied warranty" claim against Ignite (a Delaware corporation with its principal place of business in

Illinois) on behalf of every person in the United States who purchased a water bottle. The Federal Rules of Civil Procedure—not to mention basic notions of fairness—require Plaintiffs to make clear what law applies to this heterogeneous cause of action. Tellingly, Plaintiffs have cited no case—and Ignite is aware of none—where a generic cause of action like the one contained in the FAC was allowed to survive a Rule 12(b)(6) motion to dismiss.

### B. Plaintiff Luchetti's Implied Warranty Claim Fails Under New York Law

#### 1. Plaintiffs' "Thing of Danger" Argument is Contrary to New York Law

Plaintiff Luchetti argues that her lack of privity with Ignite should not be fatal to her implied warranty claim because the water bottles are a "thing of danger," which provides an exception to the requirement of privity for claims involving only economic loss. Opp. at 15. This argument is simply false: there is no "thing of danger" exception to the privity requirement in New York. In fact, the exact argument Plaintiffs make has been squarely and repeatedly rejected by federal courts interpreting New York law. *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 312 (N.D.N.Y. 2019) ("[N]o thing-of-danger exception exists under New York law for claims involving purely economic injury."); *Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *5 (E.D.N.Y. Sept. 30, 2015) ("[T]his Court concludes that, under New York law, there is no 'thing of danger' exception to the privity rule for implied warranty claims that involve purely economic loss."); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016) ("Th[e] purported 'thing of danger' exception does not appear in recent New York cases, which have overwhelmingly upheld the privity requirement where only economic loss is alleged in cases that involve indisputably dangerous products.").

Second, even if there were a "thing of danger" exception to the privity requirement, that concept applies to products that are—by their nature—*inherently* dangerous, as the case upon which Plaintiffs rely makes clear. Opp. at 15 *citing Wade v. Tiffin Motorhomes, Inc.*, 686 F.

Supp. 2d 174, 191 (N.D.N.Y. 2007) (propane gas system attached to motor home was a "thing of danger" given the inherent possibility of explosion). A water bottle is nothing like a propane gas system. As a matter of law, Plaintiff Luchetti's lack of privity with Ignite is fatal to her breach of implied warranty claim.

### 2. *Luchetti's Failure to Give Notice Requires Dismissal*

New York law unequivocally requires that a buyer notify the seller of an alleged breach of warranty before filing suit. *See* N.Y. U.C.C. § 2-607(3). The reason for this requirement is obvious: the seller should be provided with an opportunity to conform the product to the terms of the warranty before being put through the burden and expense of litigation. Notwithstanding the plain statutory language, Plaintiffs argue they do not have any obligation to provide notice, citing two cases that are totally inapposite: a Seventh Circuit case that involved the requirement of Wisconsin's Consumer Protection Act that 30-days' notice be given to the defendant before a suit can be filed; and a Connecticut case addressing a similar notice provision in Texas's consumer protection statute. Opp. at 14. Obviously, these decisions have no bearing whatsoever on whether New York's U.C.C. § 2-607(3)—which requires a plaintiff to provide notice of an alleged breach of warranty "or be barred from any remedy"—requires dismissal of her claim under Rule 12(b)(6). The ***relevant*** authorities are clear that failure to comply with that requirement requires dismissal. *Richards v. Johnson & Johnson, Inc.*, 2018 WL 2976002, at *8 (N.D.N.Y. June 12, 2018) (dismissing implied warranty claim under Rule 12(b)(6) based on the plaintiff's failure to provide notice as required by U.C.C. § 2-607(3)).

Plaintiffs also argue that they sent a "notice letter" to Ignite (Opp. at 14), but that argument fails because the FAC does not allege that notice was provided, nor have Plaintiffs otherwise provided the supposed letter to the Court. It is axiomatic that Plaintiffs "cannot correct the defects

in [their] complaint by referring to matters outside of the pleading." *Cavallone v. Lemming*, 1987 WL 7488, at *2 (N.D. Ill. Mar 2, 1987).

Plaintiffs also argue that the filing of the original complaint was sufficient to satisfy the notice requirements of N.Y. U.C.C. § 2-607(3) (Opp. at 14), but once again the authorities they cite are entirely inapposite. Plaintiffs cite *Marin v. Apple-Metro*, 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017), but that was an employment lawsuit (not a breach of warranty case), and the "notice" referenced in the quotation was whether the complaint put the defendant on notice of the scope of the plaintiffs' allegations. And the bankruptcy case Plaintiffs cite (Opp. at 14-15) dealt with whether the complaint adequately delimited the specific fraudulent conduct of each defendant. *See In re Everfresh Beverages, Inc.*, 238 B.R. 558, 582 (Bankr. S.D.N.Y. 1999). These cases have *absolutely nothing to do with New York warranty law*, which requires that a buyer notify the seller of an alleged breach of warranty or be barred from any remedy. N.Y. U.C.C. § 2-607(3). Where—as here—the complaint lacks any allegation that such notice was provided, the claim is subject to dismissal under Rule 12(b)(6). *See Richards*, 2018 WL 2976002 at *8.

**V. THE FAC FAILS TO ALLEGE FACTS TO SUPPORT UNJUST ENRICHMENT CLAIMS**

As noted above, Plaintiffs' failure to identify the specific law that applies to their generic unjust enrichment claim, brought on behalf of every person in the United States who bought a water bottle, requires dismissal under Rule 12(b)(6). *See In re VTech*, 2018 WL 1863953, at *8.

Moreover, under both Pennsylvania and New York law, Plaintiffs fail to state a claim for unjust enrichment. As Ignite made clear in its opening brief, unjust enrichment claims in those jurisdictions are extremely limited and are inapplicable to cases such as this one, where a consumer complains she purchased a product but did not receive the full "benefit of her bargain." *Tatum v. Takeda Pharma. N. Am. Inc.*, 2012 WL 5182895, at *4-5 (E.D. Pa. Oct. 19, 2012) (action based on

purchase of defective product "is not a case in which a claim for unjust enrichment is appropriate"); *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff"). Plaintiffs do not even attempt to address these authorities; they argue only that they are entitled to plead unjust enrichment "in the alternative." Opp. at 15-16. But this is not a question of pleading in the alternative—the foregoing authorities make clear that the facts alleged in the FAC do not state a viable claim for unjust enrichment under the substantive law of Pennsylvania and New York. Simply put, Plaintiffs purchased a product they allege to be defective and now seek to recover some measure of the purchase price, which is ***not*** a valid basis for an "unjust enrichment" claim under either Pennsylvania or New York law.

## VI. CONCLUSION

For the foregoing reasons, the FAC should be dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim on which relief can be granted.

Dated: January 14, 2020

Respectfully submitted,

SCHIFF HARDIN LLP
Attorneys for Defendant Ignite USA, LLC

By: */s/ Steven E. Swaney*

Joseph J. Krasovec III
Steven E. Swaney (*pro hac vice*)
Jeffrey M. Heckendorn
Schiff Hardin LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312.258.5500
Firm ID #90219

CH2\22892359.1