# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE MIRZA and TARA LUCHETTI, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 19 C 5836 |
| | ) | |
| IGNITE USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Ignite USA, LLC's ("Ignite") motion to dismiss Plaintiffs Dominique Mirza ("Mirza") and Tara Luchetti's ("Luchetti") (collectively, "Plaintiffs") amended class action complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court denies the 12(b)(1) motion and grants in part the 12(b)(6) motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiffs' favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Mirza is a citizen of Pennsylvania who resides in East Stroudsburg, Pennsylvania. Plaintiff Luchetti is a citizen of New York who resides in East Rochester, New York. Defendant Ignite is an Illinois corporation with its principal place of business in Chicago, Illinois. Ignite distributes reusable beverage containers, coffee mugs, water bottles, and kids' cups under the "Contigo" brand name.

Both Mirza and Luchetti are parents to young children. In October of 2018, Luchetti purchased a Contigo® Kids Cleanable Water Bottle from a Target store in Penfield, New York. In April of 2019, Mirza bought two stainless steel Contigo® Kids Cleanable Water Bottles from a Target store in Pennsylvania. At some point after buying the water bottles, the bottles' clear silicone spout detached, posing a choking hazard to Plaintiffs' children. On August 27, 2019, Ignite issued a recall for the water bottles. The recall offered to replace the lid on the water bottles but did not offer purchasers any monetary relief.

Plaintiffs seek to represent a class defined as all persons in the United States who bought a Contigo® Kids Cleanable Water Bottle subject to the August 27, 2019 Voluntary Recall, who refused to take part in the recall. Furthermore, Mirza looks to represent a subclass of members who bought the water bottles in the State of Pennsylvania, while Luchetti seeks to represent those who purchased the water bottles in New York.

Plaintiffs allege that they relied and understood the name on the water bottles' packaging, "Contigo Kids," to represent that the bottles were safe for children to use.

2

They further allege that they would not have bought the water bottles had it not been for the label's suggestion that the product was designed for and safe for children. However, because the water bottles' silicone spout detached and posed a choking hazard to children, Plaintiffs claim that naming the water bottles "Contigo Kids" was false and deceptive conduct that violates several consumer protection laws.

Based on these events and allegations, Plaintiffs filed their initial complaint on August 29, 2019. On October 29, 2019, Plaintiffs filed an amended complaint, alleging claims for breach of implied warranty of merchantability in Count I, unjust enrichment in Count II, violation of Pennsylvania's Unfair Trade Practices and Consumer-Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2, *et seq*. in Count III, and violation of New York General Business Law ("GBL") §§ 349 and 350 in Counts IV and Count V.

Ignite moves the Court to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs lack standing. Alternatively, Ignite urges the Court to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have not pled facts sufficient to state claims on all five counts.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction. As in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not

its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the nonmovant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp.*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678.

## **DISCUSSION**

I.    **Subject-Matter Jurisdiction**

Ignite asserts that Plaintiffs lack Article III standing to bring their claims.  To establish standing to sue in a federal court, a plaintiff must allege that they suffered an injury-in-fact, that is fairly traceable to the challenged conduct of the defendant, and that such injury is likely redressable by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Ignite argues that Plaintiffs do not sufficiently allege an injury.

To adequately allege an injury-in-fact, a plaintiff must allege that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc.*, 136 S. Ct. at 1548.  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  *Id.*  A "concrete" injury must be "de facto"; that is, it must actually exist.  *Id.*

Plaintiffs' amended complaint alleges that they paid more for the water bottles than they would otherwise pay for a dangerous and defectively designed product. Plaintiffs also challenge the adequacy of the recall program offered by Ignite, alleging that the program does not provide minimal notice to class members and does not adequately compensate for the lost use of the product while a replacement lid was

processed. Ignite contends that both, the "benefit-of-the-bargain" and "lost use" theories do not form cognizable injuries under Article III, particularly where a free remedy—i.e., a recall—would have restored to Plaintiffs the benefit of their bargain. But that is not the law in this Circuit.

As far as standing is concerned, the Seventh Circuit has held that "[a] financial injury creates standing." *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (hereinafter, "*Aqua Dots*"). *Aqua Dots* involved a class of plaintiffs who—like Plaintiffs here—did not suffer any physical injury but alleged that they paid more than they would have if they had known of the product's risks and defects. The *Aqua Dots* Plaintiffs filed a suit challenging the adequacy of a recall issued by defendants and sought a full refund under federal law with punitive damages under state law. Notwithstanding the recall, the Seventh Circuit found that the plaintiffs sufficiently alleged a financial injury that satisfies Article III's injury requirement by claiming that they paid more for the product than they otherwise would have. *Id.* at 750–51. As in *Aqua Dots*, the presence of a recall here does not defeat the fact that Plaintiffs have alleged sufficient facts to support a financial injury—that is, they would not have paid a premium price for a defective product.[1]

---

[1] Ignite's recall argument is more properly raised on a motion challenging class certification. Ultimately, the *Aqua Dots* Court affirmed the district court's denial of class certification, holding that "[a] representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer [via recall] is not adequately protecting the class members' interests." *In re Aqua Dots Products Liability Litigation*, 654 F.3d at 752.

Ignite's reliance on *Sugasawara v. Ford Motor Company* is misplaced. *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6–7 (N.D. Cal. 2019). In *Sugasawara*, the court found financial injuries like the ones alleged here insufficient for standing purposes where a recall *actually* restored the value of the vehicles by fixing the defect. But unlike plaintiffs in *Sugasawara*, the Plaintiffs here did not take part in the recall, and thus the benefit of their bargain was not restored to them. The Court accordingly finds that Plaintiffs have alleged sufficient facts to support an injury-in-fact. Given that no other element of standing is challenged, the Court denies Ignite's motion to dismiss under Rule 12(b)(1).

## II.  Failure to State a Claim

Ignite alternatively urges the Court to dismiss all five counts of Plaintiffs' amended complaint for failure to state a claim.

### A.  Count I: Breach of Implied Warranty of Merchantability

Ignite urges the Court to dismiss Count I, arguing that the amended complaint does not specify which state's law applies. Alternatively, Ignite argues that the claim is barred under New York law because Plaintiffs have not met the threshold requirements for bringing a breach of implied warranty claim. The Court addresses each argument in turn.

This District has held that a plaintiff's failure to specify which state's law applies to common law claims does not warrant dismissal, as it is likely that the laws of the plaintiff's state of residency will apply. *Kostovetsky v. Ambit Energy Holdings, LLC*,

7

2016 WL 105980 at *8 (N.D. Ill. 2016). As to the claims of multi-state class members, New York law will likely apply to common law claims by class members residing in New York, Pennsylvania law will likely apply to common law claims of the Pennsylvania class members, and so on. *Id*; *see also Elkind v. Revlon Consumer Prod. Corp.*, 2017 WL 9480894, at *15 (E.D.N.Y. 2017), report and recommendation adopted, *Elkind v. Revlon Consumer Prod. Corp.*, 2017 WL 1169552 (E.D.N.Y. 2017) (assuming New York common law applies where plaintiffs' complaint did not specify under which state's common law warranty claim arises). The Court therefore declines to dismiss Plaintiffs' breach of implied warranty claim on this ground.[2]

Ignite next argues that Plaintiffs' breach of implied warranty claim fails as a matter of New York law because Plaintiffs are not in privity with Ignite. The Court agrees.[3]

To state a claim for breach of the implied warranty of merchantability under New York law, a plaintiff must show that "a defect in the product was a substantial factor in causing the injury and . . . that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued." *Macaluso v. Herman Miller, Inc.*, 2005 WL 563169, at *4 (S.D.N.Y. 2005) (*quoting Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (1991)). New York law further requires privity

---

[2] But as the *Kostovetsky* Court noted, "[i]t may be that the unjust enrichment laws of the various states are different enough to preclude class certification on predominance or other grounds." *Kostovetsky*, 2016 WL 105980, at 8. Nevertheless, that inquiry is premature at this point.

[3] Ignite also argues that the claim fails because Plaintiffs failed to provide notice of the breach before suing. Because we hold that the claim fails due to lack of privity, we do not reach the notice issue.

between the defendant and a plaintiff looking to bring a claim for breach of implied warranty. *Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *6 (S.D.N.Y. 2016) (*citing Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 504 N.Y.S.2d 192, 193–94 (N.Y. App. Div. 1986)("It is now settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged.")).

Plaintiffs argue that New York law recognizes an exception to the privity requirement where the product in question is a thing of danger. While it is true that there is a personal injury exception to the privity requirement in New York, the exception is not applicable here. *See Lexow*, 504 N.Y.S.2d at 194. Plaintiffs seek recovery for economic loss related to the value of their bargain but do not claim entitlement to damages for personal injury related to the defect. Thus, personal injury cannot serve as a basis for circumventing the privity requirement in this case. *See Feliciano*, 2016 WL 9344120, at *6. Accordingly, the Court finds that Plaintiffs fail to state a claim for breach of implied warranty under New York law.

### B.    Count II: Unjust Enrichment

Ignite urges the Court to dismiss Count II, arguing that Pennsylvania and New York law prohibit unjust enrichment claims that do not allege a defendant refused to perform their part of the agreement.[4] Ignite further argues that both New York and

---

[4]As with Plaintiffs' claim under Count I, Ignite urges the Court to dismiss Plaintiffs' unjust enrichment claim because the amended complaint fails to specify which state's law applies. The Court declines to

Pennsylvania law prohibit unjust enrichment claims that are duplicative of other claims. The Court disagrees in part.

### 1. Unjust Enrichment Claims Under New York Law

Under New York law, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (citations omitted). Although "[i]n a broad sense, this may be true in many cases, . . . unjust enrichment is not a catchall cause of action to be used when others fail." *Id.*

"[U]njust enrichment under New York law 'is an equitable claim that is unavailable where an adequate remedy at law exists.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (*quoting Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010)). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff[,]" as in cases "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello*, 18 N.Y.3d at 790. Accordingly, "[a]n unjust enrichment claim is not available

---

dismiss Count II because Plaintiff's failure to specify which state's law applies to unjust enrichment claims does not warrant dismissal at this stage. *Kostovetsky*, 2016 WL 105980.

where it simply duplicates, or replaces, a conventional contract or tort claim." *Id*; *see also Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 511–12 (S.D.N.Y. 2018).

Plaintiffs argue that they plead the unjust enrichment claims under New York law in the alternative, which is allowed by New York state courts. But this argument misstates the law. As mentioned above, unjust enrichment claims under New York law are only available where the defendant is guilty of no wrongdoing but still received money to which he or she is not entitled. *Corsello*, 18 N.Y.3d at 790. A fundamental allegation in Plaintiffs' amended complaint is that Ignite committed a wrongdoing by misrepresenting the quality of the product and not disclosing defects therein. It is either that Ignite was unjustly enriched through no wrongdoing of its own, or it violated consumer protection laws by engaging in deceptive conduct. Plaintiffs cannot have it both ways.

Moreover, Plaintiffs' unjust-enrichment claim under New York law appears to be duplicative of its claims under New York's GBL §§ 349 and 350. The GBL claims are premised on allegations of deceptive trade practices consisting of a failure to disclose defects and misrepresentation. Plaintiffs' unjust-enrichment claim rests upon duplicate allegations: they allege that it would be unjust for Ignite to retain its profits from misrepresentations and material omissions that caused injuries to Plaintiffs. As such, Plaintiffs' unjust-enrichment claim under New York law must fail not only because Plaintiffs allege that Ignite engaged in wrongdoing, but also because it is duplicative of the GBL claims.

## 2. Unjust Enrichment Under Pennsylvania Law

Unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Commonwealth by Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (quoting *Roethlein v. Portnoff Law Assocs., Ltd.*, 623 Pa. 1, 81 A.3d 816, 825 n.8 (2013)). In Pennsylvania, unjust enrichment claims fall into two categories. The first is a quasi-contractual theory of liability, in which case the unjust-enrichment claim is pled in the alternative to a breach of contract. *See Khawaja v. RE/MAX Cent.*, 2016 Pa. Super. 261, 151 A.3d 626, 633 (2016). The second is a theory based on underlying tortious conduct, in which case the unjust-enrichment claim is a companion claim to the underlying tort. *See Id.* at 937.

Like their claim under New York law, Plaintiffs' unjust-enrichment claim is premised on allegations of tortious conduct. Pennsylvania law views unjust enrichment claims in the tort setting as "essentially another way of stating a traditional tort claim (*i.e.*, if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).

Plaintiffs' allege that it would be unjust for Ignite to keep profits resulting from from misrepresentation and a failure to disclose the defects therein. Based on these tortious acts, Plaintiffs further allege violations of consumer protection laws in New

York and Pennsylvania. In this context, the success of their unjust-enrichment claim under Pennsylvania law depends on the success of the predicate tort. *See Steamfitters*, 171 F.3d at 937. If the tort claim is dismissed, the unjust-enrichment claim cannot survive. *Id.* at 937; *see also Tatum v. Takeda Pharm. N. Am., Inc.*, 2012 WL 5182895, at *4 (E.D. Pa. 2012) ("Unjust enrichment is not a substitute for failed tort claims in Pennsylvania."). Because the Court finds that Plaintiffs allege sufficient facts to state a claim based on tortious conduct under Pennsylvania's consumer-protection law, *see* II.C, the Court will allow Plaintiffs to proceed on their unjust-enrichment claim under Pennsylvania law.

### C.    Count III: Plaintiffs' UTPCPL Claims

The UTPCPL prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. 73 Pa. Cons. Stat. § 201-3. Ignite contends that Plaintiffs fail to state a claim under Pennsylvania law for three reasons. First, the words "Contigo Kids" are not an actionable misrepresentation. Second, the amended complaint does not sufficiently allege facts to establish a fraudulent omission. Third, and finally, the economic loss doctrine bars Plaintiffs' claims under Pennsylvania law. The Court will first address the economic loss doctrine as a threshold matter before turning to the remaining arguments.

### 1. Whether the Economic Loss Doctrine Bars Plaintiffs' UTPCPL Claims

The economic loss doctrine generally "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Ignite contends that the economic loss doctrine bars Plaintiffs' claims under the UTPCPL because they concern purely economic losses from a defective product that caused no personal injury or property damage. Plaintiffs respond that the economic loss doctrine is inapplicable to claims under the UTPCPL, as declared by Pennsylvania courts. Ignite replies that the Third Circuit's holding in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), makes clear that the doctrine applies to claims under the UTPCPL.

Predicting how the Pennsylvania Supreme Court would rule, the Third Circuit in *Werwinski* held that the economic loss doctrine applies to statutory fraud claims, including those arising under the UTPCPL. *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002). A decade later, in *Knight v. Springfield Hyundai*, the Superior Court of Pennsylvania held that the economic loss doctrine barred only "'cause[s] of action in negligence that result[ ] solely in economic damages unaccompanied by physical injury or property damage[s].'" 81 A.3d 940, 952 (Pa. Super. Ct. 2013) (*quoting Id.*). Thus, the *Knight* Court found that when claims are brought "pursuant to the UTPCPL [] and do not sound in negligence[,] . . . the economic loss doctrine is inapplicable." *Id.*

14

Since then, Pennsylvania courts have been divided on whether *Werwinski's* prediction of the Pennsylvania Supreme Court's ruling remains binding. Some have held that *Werwinski* is no longer controlling authority, instead opting to follow *Knight's* ruling that the doctrine is inapplicable to claims brought under the UTPCPL. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 411 (E.D. Pa. 2016) (collecting cases). Other courts have held that *Werwinski's* prediction remains binding. *See Id*; *see also Moore v. State Farm Fire & Cas. Co.*, 2015 WL 463943, at *2 (E.D. Pa. 2015) (applying *Werwinski* after *Knight*).

This District has previously weighed in on this debate in *Greene v. Sears Prot. Co.*, 2017 WL 1134484, at *3 (N.D. Ill. Mar. 27, 2017). The *Greene* Court chose to follow the decisions of Pennsylvania's intermediate appellate courts as opposed to that of the Third Circuit. *Id.* The court noted that district courts in Pennsylvania continued to follow *Werwinski* because they are bound by the Third Circuit's decisions. Courts in the Seventh Circuit, however, are not. *Id.* And the Seventh Circuit instructs us "to consult and follow the decisions of intermediate appellate courts unless there is a convincing reasons [sic] to predict the state's highest court would disagree." *Id.* (*citing ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)). Accordingly, we decline to follow *Werwinski* because Ignite has failed to articulate any reason, let alone a convincing one, as to why the Pennsylvania Supreme Court would disagree with the Pennsylvania Superior Court's ruling. The Court therefore finds that Plaintiffs' claim is not barred by the economic loss doctrine.

15

## 2. Whether the Name "Contigo Kids" is an Actionable Misrepresentation Under Pennsylvania Law

Ignite argues that the product name "Contigo Kids" is not an actionable misrepresentation under Pennsylvania law because it is not subject to a true or false measurement, and no reasonable consumer would read the name to imply that the product is free from defect.  The Court disagrees.

To state a claim under Pennsylvania's UTPCPL, a plaintiff must allege that: (1) he or she bought or leased goods or services primarily for a personal, family, or household purpose; (2) he or she suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use by a person of a practice barred by the UTPCPL.  *McLaughlin v. Bayer Corp*., 2016 WL 1161578, at *18 (E.D. Pa. 2016).

As relevant here, acts barred by Pennsylvania's UTPCPL include: (1) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;" (2) "[r]epresenting that goods or services are of a particular standard, quality or  . . . if they are of another;" (3) "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;" and (4) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Cons. Stat. §§ 201-2(4)(v), (vii), (xiv), (xxi).

16

To state a claim under these provisions respectively, a plaintiff must allege, among other things: (1) a false representation of a product's characteristic, sponsorship, approval, ingredients, uses, or benefits, *see Seldon v. Home Loan Servs., Inc*., 647 F. Supp. 2d 451, 466 (E.D. Pa.2009) (listing elements for a claim under § 201-2(4)(v)); (2) a false representation or affirmation that the goods are of a certain quality or standard, s*ee id*. (listing elements for a claim under § 201-2(4)(vii)); (3) a written guarantee or warranty and its terms, *see id*. (listing elements for a claim under § 201-2(4)(xiv)); and (4) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances. *See Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (listing elements for a claim under § 201-2(4)(xxi)). A common theme in stating a claim under these provisions is that a plaintiff must allege that a representation is deceptive. The crux of Ignite's argument is that a product name cannot be deceptive because it is not subject to a true or false measurement.

In assessing whether a product name can be deceptive, the Third Circuit conducts a facial analysis of the product name to determine whether the consumer will "unavoidably receive a false message from the product's name." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002). To determine falsity, a court must first determine the unambiguous claims made by the product name, and then assess whether those claims are false. *Id.*

Under this standard, Plaintiffs allege sufficient facts showing Ignite made a false representation as to a product's characteristic, quality, or standard. The name "Contigo

17

Kids" signals to consumers that the water bottles are designed for children. One would expect products made for children, at the very least, to be free from defects that would pose a choking hazard given the frequency of choking incidents for this age group. Absent a warning to the contrary, the presence of the term "Kids" on the label misleads consumers into believing that the product is safe for children. And contrary to Ignite's argument, "[a] 'literally false' message may be either explicit or 'conveyed by *necessary implication* when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Id.* (emphasis added). The Court therefore finds that Plaintiffs allege sufficient facts to show that the term "Contigo Kids" is a false representation as required by § 201-2(4)(v) and (vii) of Pennsylvania's UTPCPL.

The Court further finds that Plaintiffs allege sufficient facts to state a claim under the UTPCPL § 201-2(4)(xiv) and (xxi). The name signals that the water bottles were made for children, and a necessary implication of products made for children is that they are safe for their use. Accordingly, a reasonable consumer looking for water bottles for her children could be reasonably misled by the product's name.

### 3. Whether Plaintiffs State a Fraudulent Omission Claim

Ignite next argues that Plaintiffs fail to allege facts showing Ignite knew of the defect at the time the product was sold. To state a fraudulent omission claim under the UTPCPL § 201–2(4)(xxi), a plaintiff must allege that the defendant knew the information that should have been disclosed and acted deceptively to withhold that

information. *Vullings v. Bryant Heating & Cooling Sys.*, 2019 WL 687881, at *6 (E.D. Pa. 2019). A general allegation that a defendant knew of a defect but did not disclose it is insufficient to support a claim. *Id.*

Plaintiffs' amended complaint alleges that Ignite knowingly withheld from consumers the product's defect and the risks the defect posed to children's safety. In their response, Plaintiffs argue that consumer reports provided to Ignite note the defect, which shows that Ignite knew of the defect and did not disclose it. But this allegation, on its own, does not satisfy the knowledge requirement. There is no allegation in the amended complaint as to when Ignite received the reports. Therefore, the reports on their own cannot show that Ignite knew of the defect before selling the product and acted deceptively in selling the product without disclosing the defects. Accordingly, the Court finds that Plaintiffs do not state a fraudulent omission claim under Pennsylvania law.

### D.     Counts IV and V: Sections 349 and 350 of New York's General Business Law

New York GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350 (McKinney). GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. Plaintiffs rely on the same allegations in their Pennsylvania claim to support their claims under New York law.

19

To state a claim under Section 349 and Section 350 of the New York GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (*citing Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)); *see Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under Section 349). Again, Ignite argues that "Contigo Kids" is not an actionable misrepresentation under New York law and that Plaintiffs do not allege sufficient facts showing Ignite knowingly omitted information regarding the defects.

Under New York law, "materially misleading" conduct means an act that is likely to mislead a reasonable consumer acting reasonably under similar circumstances. *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 339 (E.D.N.Y. 2018) (*citing Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). Ignite's claim that product names are not legally actionable because they are not subject to a true or false assessment is inaccurate. *See Campbell*, 322 F. Supp. 3d at 339 (finding that product's name "Cranberry Apple" misled consumers into believing that the dominant ingredient was Cranberry).

As with their claims under Pennsylvania law, Plaintiffs allege that the product name "Contigo Kids" signals to consumers that the product is made for children. Plaintiffs further allege that they read the name to imply that the product is safe for children to use and would not pose a choking hazard. Plaintiffs finally allege that they

20

would not have bought the product had they not understood from the label that it was designed for children, and therefore fit for their use.

Based on these allegations, it is likely that naming the water bottles "Contigo Kids" would mislead a reasonable consumer into believing they were safe for children. Indeed, it is unclear to the Court what other purpose such a label would serve if not to suggest that the water bottles were designed for children and were safe for their use. Accordingly, the Court finds that Plaintiffs state a claim for deceptive practices and false advertising under New York law.

As to Plaintiffs' fraudulent omission claim, our analysis under Pennsylvania law also applies under New York law. New York law makes omissions actionable "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). Plaintiffs pursuing an omission-based claim must "plausibly allege[] that the . . . [d]efendants had knowledge of the [material information] and failed to disclose or actively concealed such information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016). A defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability under § 349. *Id.* As noted in our discussion of Pennsylvania law, Plaintiffs do not allege sufficient facts showing Ignite knew of the defect before they sold the product. Accordingly, the Court finds that Plaintiffs fail to state a fraudulent omission claim under New York law.

21

## CONCLUSION

For the reasons mentioned above, the Court denies Ignite's motion to dismiss under Rule 12(b)(1).  The Court grants in part and denies in part the motion to dismiss under Rule 12(b)(6).  The motion is granted as to Count I in its entirety.  The motion is granted as to Plaintiffs' New York claims in Count II and is denied as to their Pennsylvania claims under that Count.  The motion is granted as to the fraudulent omission claims in Count III, IV, and V and is denied as to the misrepresentation and deceptive practices claims in those counts.  It is so ordered.

Dated:  02/12/2020

Charles P. Kocoras
United States District Judge

22